LASSER, P.J.T.C.
Taxpayer contests the 1990 real property tax assessment on the Sears, Roebuck & Co. (Sears) department store in the Rockaway Townsquare Shopping Center (Rockaway Mall) on Route 80 and Mt. Hope Avenue in Rockaway Township, shown as Block 11001, Lot 5 on the tax map of the taxing district.
The property in contest consists of a modern two-story Sears department store 188,576 square feet in size, built in 1978, located on a parcel of land 15 acres in size within the regional shopping center. The store and the land upon which it is constructed are owned by Sears and are the subject of cross easements governing the use of the common areas and parking lot.
The Sears store is one of four anchor stores in the Rockaway Mall. The four anchor stores—J.C. Penney, Lord & Taylor, Macy’s and Sears—all have store buildings at least 150,000 square feet in size, and all are parties to an operating agreement with the shopping center owner which, in part, requires them to continue operation for a term of years as well as contribute to common-area maintenance. The subject shopping center consists of 1.3 million square feet of stores on 65 acres and is specially zoned for use as a regional shopping mall.
The 1990 assessment in contest is:
Land $ 2,250,000
Improvements 8,350,000
Total $10,600,000
*383 The 1990 common level of assessment as established by the Director of the Division of Taxation pursuant to N.J.S.A. 54:1-35b (chapter 123) is 58.99%, with an upper limit of 67.84% and a lower limit of 50.4%. Valuation and discrimination are in issue.
Taxpayer presented the testimony of an appraisal expert who utilized the cost, income and sales comparison approaches to value. Taxing district presented the testimony of an appraisal expert who relied solely on the cost approach, for the stated reason that, in his opinion, there are neither sales nor leases of major department store anchors in regional shopping centers in New Jersey that reflect the market value or market rental of this property.
A comparison of the cost approaches of the experts follows:
Taxpayer
Reproduction Cost New:
Department Store $12,579,232
Site Improvements 548,018
Total Reproduction Cost $13,127,249
Less Accrued Depreciation From All Causes (44%) - 5,775,990
Depreciated Value of Improvements $ 7,351,259
Land Value (15 acres @ $150,000/acre) 2,250,000
Total Value Indicated by Cost Approach $ 9,601,250 [sic]
Rounded to $ 9,600,000
Taxing District
Land Value (15 acres @ $370,000/acre) $ 5,550,000
Building Replacement Cost New 11,546,508
Plus Entrepreneurial Profit (10%) 1,709,650
$18,806,158
Less 20% depreciation on bldg, component ($11,546,508 X 1.10 X .20) - 2,540,232
$16,265,926
*384 Site Improvements $1,356,892
Less 30% physical depreciation — 407,067 • 949,825
Total Value Indicated by Cost Approach $17,215,751
Rounded to $17,215,000
As indicated above, taxpayer’s expert valued the land at $150,000 an acre and taxing district’s expert valued the land at $370,000 an acre. A summary of the land sales used by these experts follows:
Taxpayer
Sale # 1 2 3 4
Location Zoning Dover Rockaway Industrial Office Dover Randolph Industrial Commercial
Date of Sale Jul-87 Feb-88 Aug-86 Jan-87
Sale Price $665,000 $9,000,000 $2,379,300 $400,000
Area (Acres) 7.00 71.84 24.72 3.50
Price/Acre $ 95,000 $ 125,278 $ 96,250 $114,286
Total Adjustments (time, size, location) 11.96% 31.54% 31.93% 27.49%
Adj. Price/Acre $106,360 $ 164,793 ; 126,983 $145,698
Taxing District
Sale # 2 3 4 5 (Lease)
Location Zonini Rockaway Office Denville Commercial Par-Troy Commercial Par-Troy Commercial Rockaway Commercial
Sale Acre $250,556 $378,049 $724,638 $977,918 $418,943
Date of Sale 2/88 4/88 8/86 11/87 7/88
Area (Acres) 71.84 8.2 3.45 3.171 5.49
Net Adjstmts. +50% 0% -48% -55% -15%
Land Value For Subject $375,828 $378,049 $375,000 $440,063 $356,101
Land Value: $370,000/acre
Taxpayer’s sales # 1 and # 3 are in close proximity to the subject but are in Dover Town and are not zoned for retail sale. Taxpayer's sale # 2 (taxing district’s sale # 1), although across the street from the subject, is zoned for office building use and is a sale of raw land without approvals or improvements. Taxing district’s appraisal expert testified that approval to *385 build 955,050 square feet of office space on Taxpayer’s sale # 2 property was obtained after the sale (in April 1988) but was contingent on developer improvement obligations totalling $9,000,000. This witness concluded that the sale price, together with the cost of obtaining approvals for office building use, was $18,000,000, or $250,556 an acre. Taxpayer’s sale # 4 is a small parcel (3.5 acres) in an inferior location which, after the sale, was developed with a 20-store strip-shopping center. I do not find any of taxpayer’s expert’s sale properties to be comparable to the subject 15-acre parcel of land in a regional shopping center zoned for use as an anchor department store, with amenities that include high visibility from a major highway, ample parking and a developed road network.
Taxing district’s expert’s four sales and one land lease of retail-zoned parcels indicate substantially higher per-acre values than those presented by taxpayer. In estimating land value for the subject property, I have taken into consideration taxing district’s expert’s three commercial sales, but I give most weight to sale # 5, a land lease from Rockaway Center Associates, the owner of Rockaway Mall, to Toys “R” Us for a parcel of land within the perimeter of the subject mall. The land lease is for a term of 25 years with five additional option terms of five years each. The graduated annual net rental for the first 25 years increases from $230,000 in the first year to $340,000 a year in the last five years. This expert conservatively capitalized the first year net land lease rental of $230,000 at 10% to derive a land value of $2,300,000, or $418,943 an acre, and deducted 15% to adjust for the larger size of the Sears parcel. I conclude that the taxing district’s expert’s opinion of land value of $370,000 an acre as of October 1, 1989 is better supported by the evidence, and I accept this land value.
Taxpayer’s expert’s income approach value is derived from an analysis of seven lease rentals as follows:
*386 Rental # 12 3 4
Store Caldor Caldor J.C.Penney Sears
Location Plainsboro Marlboro Pohateong Pohatcong
Yr. Built 1987 1988 1989 1989
Lease Date Aug-87 Mar-89 Sep-89 Sep-89
Annual Rent $533,000 $389,000 $269,034 $250,000
Area 82,000 85,000 68,983 89,733
Rent/Sq. Ft. $6.50 $4.58 $3.90 $2.79
Bldg. Adjustments 1.66 0.13 0.98 0.00
Net Rental $4.84 $4.45 $2.92 $2.79
Adjustments 19% —2% 10% 10%
ADJUSTED RENT/SQ. FT. $5.76 $4.36 $3.21 $3.06
Rental # 6 7
Store Location J.C.Penney Phila, Pa. Sears Phila. Pa. Sears Langhorne, Pa.
Yr. Built 1989 1989 1976
Lease Date May-89 May-89 Aug-89
Annual Rent $497,475 $508,500 $337,350
Area 101,620 101,700 173,000
Rent/Sq. Ft. $4.90 $5.00 $1.95
Bldg. Adjustments 1.66 0.18 0.13
Net Rental $3.24 $4.82 $1.82
Adjustments -3% -3% 2%
ADJUSTED RENT/SQ. FT. $3.14 $4.68 $1.86
After adjusting these rentals for time, age and location, this expert concluded that the economic rental for the subject is $5.25 a square foot net. This expert’s income approach value is calculated as follows:
Net rental (188,576 sq. ft. x $5.25) $ 990,024
Capitalized at 10.5% $9,428,800
Rounded to $9,430,000
This expert’s sales comparison approach utilized five sales as follows:
Sale # Location #1 Abington Pa. #2 Abington Pa. #3 Abington Pa. #4 #5 (Lease) Upper Woodbridge Merion, Pa. N.J.
Date of Sale 9/86 12/87 2/88 6/87 5/89
Sale Price $6,000,000 6,850,000 10,290,000 6,500,000 4,800,000
Bldg. Area (Sq. Ft.) 155,800 174,300 233,000 232,900 146,588
Year Built 1982 1982 1982 1984 1979
Land Area (acres) 6.912 6.912 17.66 2.082 -0-
Price/Sq. Ft. $38.51 39.30 44.16 27.91 32.74
*387 Sale # Location #1 Abington Pa. #2 Abington Pa. #3 Abington Pa. #4 Upper Merion, Pa. # 5 (Lease) Woodbridge N.J.
Adjustments (Time, Age, Land/ Bldg Ratio) + 40% + 33% + 12% + 60% + 62%
Adj. Price/Sq. Ft. $53.99 52.14 49.25 44.63 53.15
Subject Value 188,576 sq. ft. x $49/sq. ft. = $9,240,000 (rounded)
Taxpayer’s appraisal expert relied most heavily on the sales comparison approach to value the subject at $9,240,000. His sales comparison approach value is the result of his consideration of three sales in Willow Grove Park Mall in Abington, Pennsylvania, one sale in Upper Merion, Pennsylvania and one lease in Woodbridge, New Jersey.
Taxpayer’s sales # 1 and # 2 involve successive sales of a former B. Altman & Co. department store in Abington, Pennsylvania. In sale # 1, the Altman property was acquired by KMO Disposition Co. in 1986. Sale # 1 is at $38.51 a square foot for land and building.[1] Deducting land at $370,000 an acre (assuming that the locations are of equal value)[2] results in a balance of the sale price attributable to the improvements of $22.46 a square foot, which is substantially less than the depreciated cost of the subject testified to by both experts (taxpayer, $39; taxing district, $62).
Exchange Associates then entered into a “swap” of the Altman store for the Sears store in the Abington, Pennsylvania mall (sale # 2). The recorded sale price was $12,000,000 ($68.85 a square foot for land and building or $50 a square foot for building alone after deducting $370,000 an acre for land). This expert deducted $5,150,000 for structural and interior renova *388 tions as well as the installation of fixtures reimbursed to Sears, the details of which are not in evidence. I find that the 1986 sale of this property was a distress sale, and that the 1987 “swap” has too many unknown facts to permit me to rely on the conclusions this expert draws from these transactions.[3]
The third and fourth sales are of Abraham & Straus department store properties in Abington, Pennsylvania, and Upper Merion, Pennsylvania, at sale prices of $44.16 and $27.90 a square foot for land and building combined, respectively. I cannot determine from the evidence whether these locations are comparable to the subject. These sales of relatively new department stores appear to be distress sales because, assuming that the locations are of equal value, deducting land at $370,000 an acre yields sale prices attributable to the buildings of $16.12 and $24.60 a square foot, respectively.
Taxpayer’s appraisal expert’s fifth sale is the sale of a leasehold in Woodbridge, New Jersey. Westbury Property Investment Company purchased the lease of a former Hahne department store for $7,500,000. The terms of the lease are not in evidence. Taxpayer’s expert deducted $2,700,000 for furniture, fixtures and equipment which, he stated at trial, were included in the sale, and concluded that the lease was sold for $46.25 a square foot.
I find that this “sale” is not comparable because the $2,700,-000 deduction may well have included fixtures which are real property. Additionally, deducting the 10.453 acres of land lease at $370,000 an acre, or $3,867,610, from this expert’s $4,800,000 value for land and building combined would yield a price of $6.36 a square foot for the building. It is well known that Hahne discontinued its business, and it appears that this is also a distress sale of a leasehold interest.
*389 I therefore find that I cannot rely on taxpayer’s expert’s sales to value the subject property. I cannot find that the Pennsylvania shopping center properties are comparable to the subject because I have no evidence of the land values of the Pennsylvania shopping centers or the relationship of the values of these locations to the subject. The Pennsylvania shopping centers may be less valuable locations, which may explain the low rents and sale prices used by taxpayer’s expert and why Abraham & Straus vacated these malls. Sales volume information would have been helpful as an indication of the degree of success of these centers and their comparability to the subject. Taxpayer’s expert has performed appraisal services for Sears in Rockaway Mall and other locations, and has performed other appraisal services for the subject mall for ten years, yet, he testified that he did not inquire about, and did not know, the sales volume of the subject Sears store or the comparable sale stores.
Similarly, I cannot rely on leases in the Plainsboro Shopping Center, Marlboro Plaza and Phillipsburg Mall in New Jersey and Franklin Mills Mall and Oxford Valley Mall in Pennsylvania because information concerning sales volume and percentage rent has not been furnished. The subject is a Sears department store in an apparently successful regional shopping mall. Lord & Taylor and Toys “R” Us, substantial retail merchants, have recently chosen to be a part of this mall. A department store in a flourishing regional mall is obviously more valuable than one in a depressed shopping center.
Due to the lack of information about sales or leases that can be established as being comparable to the subject and the absence of sales volume information for the subject, I find that the cost approach is the best indicator of value for the subject.
Both experts relied on the Marshall & Swift Valuation Service to calculate the cost of the subject property, and they were very close in their cost estimates before depreciation: taxpayer, $13,127,249; taxing district, $12,903,400. However, taxpayer’s expert called his result the “reproduction” cost and *390 taxing district’s expert called his method the “replacement” cost. Appraisal theory holds that functional obsolescence must be deducted from reproduction cost, but that this deduction is taken into account for items of noncurable functional obsolescence by the replacement cost. American Institute of Real Estate Appraisers, The Appraisal of Real Estate 351-52 (9 ed. 1987). Having rejected taxpayer’s appraisal expert’s income and sales comparison approaches, I conclude that there is no evidence of specific functional or economic obsolescence and that depreciation of 20% on the building component used by taxing district’s expert adequately reflects all types of depreciation for the subject.
Further, the fact that this is an apparently successful department store in a well-located and successful regional mall, and the absence of sales volume information, give rise to an inference that the market would recognize a profit for the developer. This justifies the inclusion of entrepreneurial profit in the cost approach based on a reasonable estimate of the profit entrepreneurs expect in the development of similar projects. This cost element is described in The Appraisal of Real Estate, supra:
An anticipated profit is often the primary motivation for developing property. The total cost of a project before entrepreneurial profit should be less than the market value of the completed property to reward investors for their risk. The difference between the cost of development and the value of a property after completion is the entrepreneurial profit or loss. This is also known as developer’s profit. Whether a profit is actually realized depends on how successful the developers have been in selecting the site, constructing the improvements, obtaining the proper tenant mix, and designing the leases, and how well they have analyzed the market demand for the property. [Id. at 353.]
The subject is a ten-year-old department store which would cost approximately $13,000,000 new if built on the assessing date. Taxpayer’s expert relied on his income and sales comparison approaches from which to deduce obsolescence and depreciation. I have rejected these approaches and have no evidence that this property is other than a successful department store in a successful regional mall. I therefore accept taxing district’s expert’s cost approach, including his entrepreneurial *391 profit of 10% and his depreciation rate of 20%, both of which I find reasonable,[4] for a total value for the subject of:
Building $11,546,508
Plus Entrepreneurial Profit 1,154,650
$12,701,158
Less 20% Depreciation — 2,540,232
$10,160,926
Site Improvements (after 30% depreciation) 949,825
Entrepreneurial Profit Attributable to Site Improvements 94,982
Total Building and Improvements Value $11,205,733
Add Land Value 5,550,000
Total Value $16,755,733
Rounded to $16,756,000
Since the 1990 assessment of $10,600,000 is 63.26% of my estimated value for the subject of $16,756,000, and is within the 50.4% to 67.84% common level range, the 1990 assessment is affirmed. The Clerk of the Tax Court is directed to enter judgment accordingly.

This expert makes no adjustment for any difference in land value which may exist between the Abington, Pennsylvania, and Rockaway, New Jersey, locations.

If this assumption is incorrect, it is likely that the sale property is not comparable.

The unknown facts include the value of the former Sears store which was the subject of the "swap”; the reason why the deed stated the purchase price to be $12,000,000; the details of the reimbursements to Sears.

However, I find that where land is valued at the market by the use of comparable land sales, the market has already reflected entrepreneurial profit in the land value and the 10% factor should only be applied to the improvements cost.