PER CURIAM.
The taxpayer, Mays Center Associates Corp., the owner and operator of the Lord & Taylor Department Store in the Rockaway Mall, appeals from the Tax Court’s real property tax assessments for 1991 and 1992. The parties agreed to some factors, namely, the land valuation at $3,300,000; the replacement cost of the building at $10,500,000; the value of site improvements after depreciation of $775,000; and the common level ratio of assessments for the two years. The taxpayer, however, claimed that its experts’ opinions utilizing the comparable sales approach to valuation and the capitalization of income approach should not have been rejected by the court.
*170 Judge Lasser reviewed the taxpayer’s proffered proofs of valuation based upon the comparable sales approach and determined that each of the sales were subject to such serious flaws that they could not be considered arms-length transactions. In his opinion, therefore, they failed to yield a basis to determine the fair market value of this property, ie., what a willing buyer would pay a willing seller free of other extraneous market forces. City of New Brunswick v. State Div. of Tax Appeals, 39 N.J. 537, 542, 189 A.2d 702 (1963).
Similarly, Judge Lasser rejected the taxpayer’s proofs concerning the rental value for the approximately 154,000 square foot store. See Mays Ctr. Assocs. Corp. v. Township of Rockaway, 13 N.J.Tax 431, 435-438, 441-442 (Tax 1993). He found that the taxpayer’s location and the physical condition of the property was “substantially superior” to the proffered five rentals advanced by the taxpayer. Id. at 441. There were such substantial adjust ments that were required to be made to each of these proposed other anchor store rentals that it made them of “questionable reliability.” Ibid. The judge did, however, make the adjustments and came to the conclusion that a $7 per square foot rental might be employed. Applying a two and one-half percent vacancy rate and four percent ownership expense, the property would generate a net operating income slightly in excess of $1,000,000 a year. The judge capitalized the income as seven and one-quarter percent [1] which yielded a rounded value of $13,917,400. We recognize that a Tax Court judge may reject a capitalization rate proposed by a party or an expert and “select its own rate of return.” River Drive Village v. City of Garfield, 7 N.J.Tax 632, 642 (Tax 1985); Alrmax Builders, Inc. v. City of Perth Amboy, 1 N.J.Tax 31, 40 (Tax 1980). Judge Lasser, however, did not rely upon the valuation determined on this income approach but merely used it “as a *171 check ... to determine the property assessment of the subject.” Mays Ctr. Assocs. Corp., supra, 13 N.J.Tax at 442.
Having rejected the comparable sales approach due to a failure of proof by the taxpayer and having also rejected the capitalization of income approach except to use it as a check, Judge Lasser determined that under the special circumstances of this case he would rely upon the depreciated construction cost to determine value. In this case, as noted earlier, the parties had stipulated to the land value, replacement costs of the building, and the value of site improvements. Thus, the only factor open to dispute in the depreciated cost equation was the depreciation rate itself. The taxpayer’s experts had urged that the judge should apply a 57.5 percent depreciation rate. The district offered a ten percent rate. The judge agreed with the district’s analysis. The judge found “no justification for the 57.5 percent depreciation for a newly-renovated building” since this calculation would yield a value “less than the land value plus the renovation cost.” Id. at 443.
We can view this case, therefore, as one in which there was a failure of proof by the taxpayer, leaving the district’s valuation intact, provided, as here, that it fell within the common ratio for the years in question. The district’s total valuation was $13,525,-000 which was multiplied by the sixty-three percent estimate of the common ratio, yielding the assessment of $8,538,300.
As a cross-check to see whether this figure is within a range of reasonableness, we can look back at the tax appeal of the same property for 1984 as revealed in Judge Lasser’s opinion in Hahne & Co. v. Township of Rockaway, supra. In 1984, before the renovation, the judge determined that there should be a twelve percent deduction for depreciation and obsolescence. Id. at 412. If the obsolescence from 1979 when the mall was originally constructed through 1984 was twelve percent, the complete reconstruction of the Lord & Taylor property after its acquisition by the taxpayer in 1990 through the 1991 assessment might well have justified even less than the ten percent rate applied by the taxing district. The district, however, recognized that even with a com- *172 píete renovation there was some lessened economic life and, therefore, agreed to the ten percent rate for functional, external and physical depreciation. We, therefore, take no issue with Judge Lasser’s acceptance of the ten percent depreciation rate.
The taxpayer has questioned the judge’s reference to the transfer of value theory as it might be applied to this case. The judge stated that “there may be an allocation of cost on transfer value from the anchor stores to the mall stores which might justify assessing anchor stores, not at their cost approach value, but at a lower figure.” This was clearly dictum. The theory suggests that a portion of the value of an anchor store is transferred to the satellite stores in the shopping center, thus the value of those stores might be considered increased and the value of the anchor store might be concomitantly decreased.[2] The judge did not reject this principle, but he also did not apply it. He merely stated that the taxpayer had failed to quantify the factors applicable to this theory. We note the taxpayer’s contention that it had never advanced this theory to the Tax Court and therefore submitted no proofs. Since the judge expressly did not apply the theory, we have no reason to consider the issue here.
We also recognize that the Supreme Court expressed a preference for the comparable sales and capitalized income bases for property valuation in Ford Motor Co. v. Township of Edison, 127 N.J. 290, 307-308, 604 A.2d 580 (1992) (“comparable sales ... would be the clearest indication of proof’), and in Glen Wall Assocs. v. Township of Wall, 99 N.J. 265, 271, 272, 279-281, 491 A.2d 1247 (1985) (sale of the property is an indication of true value, but the capitalized income approach is acceptable). As we have noted, in the case before us Judge Lasser explained why, on *173 the proofs before him, he was forced to reject the proofs to support these theories. We recognize the special expertise of the Tax Court judges to analyze allegedly comparable sales and rental situations and to either utilize or reject examples in a particular case. Given Judge Lasser’s familiarity with the property in question as revealed in the Hahne & Co. v. Township of Rockaway, supra, and his ability to select capitalization rates based upon his independent knowledge of economic factors affecting both the purchase of property and the cost of borrowed money, see Ford Motor Co. v. Township of Edison, supra, 127 N.J. at 311, 315, 604 A.2d 580; Glen Wall Assocs. v. Township of Wall, supra, 99 N.J. at 279-280,491 A.2d 1247, we find no basis to overturn the decision of the Tax Court.
Subject to these comments, we affirm the judgment confirming the 1991 and 1992 assessments substantially for the reasons expressed by Judge Lasser in his opinion reported at 13 N.J.Tax 431.
Affirmed.

 In an earlier decision involving the same property Hahne & Co. v. Township of Rockaway, 8 N.J.Tax 403, 412 (Tax Ct.1986), Judge Lasser determined that the 1984 net fair rental rate for the property was $6 per square foot, and that the capitalization rate for that year was 11.5 percent.

 Conversely, it might be thought that if the mall operator can obtain higher rental from satellite stores because of the presence of the anchor store, and is thus amenable to accepting lower rentals from the anchor store, the land for sale to an anchor store is more valuable since the store's profits will be enhanced by a reduction of its rental. We need not explore this apparent contradiction in how the transfer of value theory might work since it was not applied to this case because of the taxpayer’s failure of proof.