PER CURIAM.
Plaintiff, Mort Jablin, appeals from a Tax Court decision to affirm real property tax assessments for the 1988 and 1989 tax years on his industrial property. Plaintiff argues on appeal that the Tax Court erred when it: (1) permitted the municipality’s expert to testify, although the expert had not inspected the subject property; (2) failed to dismiss that expert’s opinion as a net opinion; (3) rejected plaintiffs expert’s inclusion of an ECRA reserve operating expense as part of his income calculations; and, (4) rejected that expert’s “paired analysis” rental rates as part of his income calculations.
The trial was held before the Hon. John J. Hopkins, J.T.C., who issued a twelve-page letter opinion in which he affirmed the real property tax assessments for both tax years. We affirm substantially for the reasons stated by Judge Hopkins and add the following comments in further response to the issues raised by plaintiff.
I
In his appellate brief, plaintiff contends that the Tax Court judge erred when he permitted the municipality’s appraisal expert to testify, and when he failed to dismiss that expert’s opinion as a net opinion. Primarily, plaintiff argues that Mason, the municipality’s expert, should not have been permitted to testify because he had not personally inspected the property at issue. In support of his argument, he maintains that the Uniform Standards of Profes *106 sional Appraisal Practice require that a real property appraisal report must include a certification specifying that the signator had personally inspected the property. Here, the appraisal report was signed by both Mason and Kirk, a staff appraiser in Mason’s office. However, only Kirk certified that he had personally inspected the subject property.
Additionally, plaintiff offers further support for his contention by pointing out that a person is precluded from testifying before a county board of taxation regarding an assessment unless he has inspected the property at issue. N.J.A.C. 18:12A-1.9(k). However, that regulation only applies to matters before a county board of assessment and is not applicable to matters before the Tax Court. Although plaintiff cites F.M.C. Stores Co. v. Boro. of Morris Plains, 195 N.J.Super. 373, 383, 479 A.2d 435 (App.Div.1984), aff'd, 100 N.J. 418, 431, 495 A.2d 1313 (1985), in support of his contention, that case merely held that the choice of forum as between the county board of taxation and the Tax Court should not affect the substantial rights of the parties.
Mason candidly admitted that, although he had not inspected the interior of the subject building, he had inspected the site and was familiar with and had reviewed the data gathered by Kirk. Thus, Mason did not mislead the court regarding his inspection of the properly and had sufficiently reviewed the data gathered by Kirk in order to offer an informed appraisal opinion.
Judge Hopkins found, relying on Evid.R. 56(2), that Mason was permitted to rely upon “facts or data ... made known to him at or before the hearing.” The judge also found that Evid.R. 56(2) supplemented N.J.S.A 2A.83-1. That statute permits a witness in any Tax Court proceeding to testify regarding information of comparable land sales obtained from the owner, seller, purchaser, lessee, or occupant of such properly or the broker or attorney who “negotiated ... or [was] cognizant of such sales____” See, N.J. Sports & Exposition Auth. v. Cariddi, 84 N.J. 102, 105-06, 417 A.2d 529 (1980). The judge’s conclusion that Mason was qualified *107 to testify was a sound interpretation of the rule. We agree with the tax judge’s view that the issue really speaks to the weight to be accorded Mason’s testimony as opposed to its admissibility.
Moreover, we reject plaintiffs assertion that Mason’s testimony amounted to nothing more than a net opinion, and, for that reason, that it should have been rejected by the Tax Court. A net opinion is one that is unsupported by factual evidence and is based only upon an expert’s bare conclusions. Buckelew v. Grossbard, 87 N.J. 512, 524, 435 A.2d 1150 (1981). Here, contrary to plaintiffs contention that Mason was “hardly familiar with any of his so-called comparable data,” Mason plainly documented his opinion and was well versed in the information upon which his opinion was based.
II
(4] Plaintiff also maintains that Judge Hopkins erred when he rejected plaintiffs expert’s inclusion of an ECRA reserve as an operating expense in his income approach calculations, and his paired rental analysis to assign different rental rates to the first and second-floor industrial spaces of the subject property.
(5] It is recognized that judges presiding in the Tax Court have special expertise, and for that reason, their findings will not be disturbed unless they are plainly arbitrary or there is a lack of substantial evidence to support them. Southbridge Park, Inc. v. Borough of Fort Lee, 201 N.J.Super. 91, 94, 492 A.2d 1026 (App.Div.1985); accord, Glenpointe Assoc. v. Tp. of Teaneck, 241 N.J.Super. 37, 46, 574 A.2d 459 (App.Div.1990), certif. denied, 122 N.J. 391, 585 A.2d 392 (1990); see, N.J.S.A 2A:3A-13 (judges of the Tax Court shall be chosen for their special qualifications, knowledge and experience in matters of taxation). However, although the Tax Court is charged with applying its own judgment to valuation data submitted by experts in order to determine a property’s true value, its right to make such an independent assessment is not “boundless”. Its determination must be based on the evidence before it and the data at its disposal. F.M.C. *108 Stores Co. v. Boro. of Morris Plains, supra, 100 N.J. at 430, 495 A.2d 1313. The scope of appellate review of the Tax Court’s decision is limited to determining whether the court’s findings of fact are supported by substantial credible evidence allowing due regard to the Tax Court’s expertise and its ability to assess credibility. Southbridge Park, Inc. v. Borough of Fort Lee, supra, 201 N.J.Super. at 94, 492 A.2d 1026.
Plaintiff contends that the ECRA reserve was an appropriate management cost. In support of his contention, he points out that our Supreme Court has recognized that environmental concerns will affect the value of industrial property. See, Inmar Associates, Inc. v. Borough of Carlstadt, 112 N.J. 593, 607-09, 549 A.2d 38 (1988). Hence, plaintiff maintains that his expert’s decision to include an additional management cost to monitor industrial property to be sure that a tenant does not pollute the premises, and to offset the cost of cleanup should such pollution occur, was warranted.
In Inmar Associates, Inc., supra, our Supreme Court held that the value of polluted property could not be determined by simply deducting the amount of cleanup costs from the value of unpolluted land. 112 N.J. at 605, 549 A.2d 38. The Court found that such a methodology would only reflect the cost accounting practices of the current owners and would not reflect the property’s true value. Id. Consequently, the Court suggested that, in view of government regulatory environmental programs such as ECRA, industrial property should be viewed as possessing “an encumbered income stream”, because the owner of such property must keep it free of pollution. Id. at 607, 549 A.2d 38. The Court suggested that an annual management expense to clean up industrial property may be used to reflect a reduced net operating income that would correspondingly reduce the appraisal value of the property as an income-producer. That is, “[t]oday’s investment in the cost of neglected cure might prudently be spread out by ‘competent management’ over a number of years.” Id. at 608, 549 A.2d 38. The Court noted that “[t]rue value for assessment purposes is based upon hypothetical conditions” and not particular *109 sales conditions, and preferred its approach to that offered by the taxpayer of an annual deduction of the actual cleanup cost from value. Id. Simply put, the Court suggested that a hypothetical operating expense deduction for the cost of cleanup would be an appropriate adjustment when determining an industrial property’s true value.
However, there is no authority in the opinion to justify such an adjustment where there is no proof that the property is polluted. Moreover, the Court’s suggested adjustment is merely that, a suggestion, since the Court ultimately left “the sound measure” of its proposal to the appraisal community. Id.
Here, Judge Hopkins found that plaintiffs expert’s ECRA reserve adjustment was unjustified “when it is considered that correction potential of contamination would be the obligation of the user.” We cannot agree with that opinion in view of Inmar Associates, supra. Plainly, an owner of property who fails to comply with the ECRA provisions becomes strictly liable, without regard to fault, for all cleanup and removal costs. Superior Air Prod. Co. v. NL Industries, 216 N.J.Super. 46, 63, 522 A.2d 1025 (App.Div.1987); N.J.S.A. 13:1K-13a. However, the judge then stated that the evidence presented did not indicate that such a reserve would be necessary based upon the manufacturing process that had been conducted in the building previously. Thus, the judge simply determined that on these facts, an ECRA reserve expense was not justified. In our view, his finding was sound in the absence of testimony that ECRA compliance was a realistic concern.
Plaintiff also attacks the judge’s rejection of his expert’s rental calculations for the subject property. According to plaintiff, the judge erroneously rejected plaintiffs expert’s paired rental analysis methodology, as opposed to the expert’s projected rental figures. Thus, plaintiff maintains that the judge erred as a matter of law. We disagree.
Both experts agreed that first-floor industrial space would command a higher rent than would upper-level floor space, because the first-floor space was more desirable. Each expert *110 testified that he had taken that factor into consideration when devising a rental rate for the subject property. However, plaintiff’s expert had based his calculations upon comparable industrial leases for multi-story buildings located in urban cities. The municipality’s expert chose to use comparable leases, albeit leases for single-story industrial and office space located in residential communities. In fact, one rental property was located in North-vale itself.
Judge Hopkins essentially rejected the rental rates developed by plaintiffs expert because they were premised upon comparable leases for properties located in urban areas that commanded lower rental rates than property located in the more affluent Northvale area. The judge accepted the finding of the municipality’s expert that $5.25 per square foot was an appropriate overall projected rental rate for the subject property. Hence, the judge rejected plaintiffs expert’s paired analysis figures because he believed that the expert had not considered the rent differential between the urban properties analyzed by taxpayer’s expert and the suburban properties considered by the municipality’s expert. See, J.C. Penney Co., Inc. v. Lawrence Tp., 8 N.J. Tax 473, 490 (Tax Ct.1986), aff'd, 9 N.J. Tax. 635 (App.Div.1987), (the tax court can evaluate the appraisal adjustments or lack of adjustments offered by experts with regard to comparable leased properties, and can then apply its own knowledge and expertise to make an appropriate determination). Because the judge’s finding was grounded in the evidence before him, and because deference is accorded the judge’s expertise and his ability to assess credibility, his finding on this issue shall not be disturbed. Southbridge Park, Inc. v. Borough of Fort Lee, supra, 201 N.J.Super. at 94, 492 A.2d 1026.
Affirmed.