**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0915-18T3

HPT TA PROPERTIES
TRUST, f/k/a TRAVELCENTERS
PROPERTIES, LP,

     Plaintiff-Respondent,

v.

BLOOMSBURY BOROUGH,

     Defendant-Appellant.

_____

             Submitted December 9, 2019 – Decided June 23, 2020

             Before Judges Fasciale and Rothstadt.

             On appeal from the Tax Court of New Jersey, Docket Nos. 8898-2014, 2900-2015, 1751-2016, and 4400-2017.

             Renaud DeAppolonio LLC, attorneys for appellant (Robert F. Renaud, on the briefs).

             Archer & Greiner PC, attorneys for respondent (Alexis Paul Genato, Jennifer N. McCracken, and Jeffrey M. Gradone, on the brief).

PER CURIAM

Defendant Bloomsbury Borough appeals from the Tax Court's four September 28, 2018 judgments reducing defendant's assessment of a property owned by plaintiff HPT TA Properties Trust f/n/a Travelcenters Properties, L.P. for the years 2014 to 2017. At trial, the Tax Court judge found that plaintiff overcame the presumption of correctness of the assessment. After considering both parties' experts' testimony and the municipal assessor's fact testimony, the judge fixed the assessment. On appeal, defendant contends that the judge (1) erred by not granting its Rule 4:37-2(b) motion and dismissing plaintiff's complaints, and (2) made various legal and evidentiary errors in setting the land's value at $200,000 per acre.

We affirm the Tax Court judge's denial of defendant's Rule 4:37-2(b) motion because plaintiff established that its evidence about value raised a debatable question as to the validity of the assessment, but for the reasons stated herein, we are constrained to remand for a further explanation as to how the judge arrived at the per acre value for the property.

I.

Plaintiff is the owner of the properties designated as Block 30, Lots 3 and 4.01, in defendant's municipality. Lot 3 contains 12.02 acres and is improved by a truck stop/travel center. Lot 4 contains 1.45 acres and is unimproved but

2

contains a detention basin that services Lot 3. Although located in rural Hunterdon County in the Highlands Planning Area, the property is adjacent to an entrance to and exit from I-78 that serves as a major artery between Pennsylvania and New York.

Plaintiff challenged defendant's assessment of the two lots for 2014 through 2017. Those assessments were as follows:

<u>Tax Assessment</u>

For the tax years in question, Lot 4.01 was assessed as follows:

| Tax Year | Land | Improvements | Total |
|---|---|---|---|
| 2014 | $122,500 | $0 | $122,500 |
| 2015 | $122,500 | $0 | $122,500 |
| 2016 | $122,500 | $0 | $122,500 |
| 2017 | $122,500 | $0 | $122,500 |

For the tax years in question, the subject property (Lot 3) was assessed as follows:

| Tax Year | Land | Improvements | Total |
|---|---|---|---|
| 2014 | $2,404,000 | $3,417,800 | $5.821,800 |
| 2015 | $2,404,000 | $3,417,800 | $5,821,800 |
| 2016 | $2,404,000 | $3,417,800 | $5,821,800 |
| 2017 | $2,404,000 | $3,417,800 | $5,821,800 |

At the July 2018 trial, the parties stipulated to using the cost approach to value the property based upon their experts' opinions that the property was

unique. [1] Both parties' experts opined that the cost approach would be the most credible method of determining the value of the property because it was "a limited market, special purpose property." The judge agreed with that approach.

The parties also stipulated to the following values with respect to the depreciated cost of improvement element of the cost approach for Lot 3:

| 2014 | $2,647,350 |
|------|------------|
| 2015 | $2,638,483 |
| 2016 | $2,597,386 |
| 2017 | $2,461,079 |

Trial proceeded on the remaining element, land value. As discussed in more detail below, the parties' experts testified at trial as to their conclusions about land value. Their conclusions are summarized as follows:

---

[1] While "[t]here is no single doctrinaire approach to the valuation of . . . property," it is typically established by using (1) the cost approach, (2) the income approach, or (3) the comparable sales approach. Shulton, Inc. v. City of Clifton, 7 N.J. Tax 208, 215-218 (Tax 1983), aff'd, 7 N.J. Tax 220 (App. Div. 1984). Under the cost approach, the value of the land and the value of the improvements are estimated separately and then added together "to arrive at an indicated value of the property." B.F. Goodrich Co. v. Oldmans Township, 17 N.J. Tax 114, 117 (Tax 1997), aff'd, 323 N.J. Super. 550 (App. Div. 1999).

A-0915-18T3

| Tax Year | 2014 | 2015 | 2016 | 2017 |
|----------|------|------|------|------|
| Valuation date | 10/1/2013 | 10/1/2014 | 10/1/2015 | 10/1/2016 |
| Plaintiff's Expert | $ 890,000 | $ 890,000 | $ 890,000 | $ 890,000 |
| Defendant's Expert | $3,785,000 | $3,785,000 | $3,910,000 | $3,910,000 |

However, prior to defendant presenting its proofs, it moved for dismissal under Rule 4:37-2(b) at the close of plaintiff's case. The judge denied the motion after concluding that plaintiff's expert's opinions, if true, raised doubt as to whether defendant's original tax "assessments exceeded the market value for the tax years at issue."

At the conclusion of trial, the judge was concerned with the lack of "comparable land sales with the same zoning and/or highest and best use [(HBU)] as . . . [plaintiff's] property." The judge requested that the parties submit closing briefs that addressed "whether [she] should affirm the land value assessment and reconcile that value with the previously stipulated depreciated cost of improvement value to determine current market value." After considering the evidence and the parties' post trial submissions, the Tax Court judge issued a written decision on September 28, 2018 and entered the judgments under appeal.

A-0915-18T3

In her decision, the judge made findings of fact with respect to the property and the surrounding area. She found that both experts agreed that the HBU of the subject property is its current use as a truck stop/travel center, and that all four tests for the HBU were satisfied. Specifically, she found that the use of the truck stop/travel center was "physically possible," the area was "financially feasible," "[i]t would be maximally productive . . . based on the demand for this type of facility," and "the current configuration and functional layout" was best used as a truck stop/travel center.

Next, the judge summarized the testimony at trial. As the judge described, defendant's tax assessor testified that the tax assessment had remained unchanged since 2006 until it was reassessed in 2010 and 2014 and had been set using a "formula" followed by an outside appraisal service. Plaintiff's expert, a real estate appraiser, testified that the HBU of the property was "continued use as a truck stop." He also "concentrated on the land component of the real estate" and could not find any directly comparable land sales—that is, land sales for truck stops/travel centers. Instead, he described comparable non-developed land sales, many of which "were non-usable sales" from within Hunterdon County or dissimilar properties, including farms, streams and wetlands, undevelopable land in a preservation area, and "residentially zoned property." After using these

6

properties and making "adjustments for conditions of sale, necessary approvals and shape and topography," he concluded that the value of the land component of the property was $60,000 per acre, plus "ten percent for entrepreneurial profit premium,[] for all [four] tax years under appeal." He combined the two lots and arrived at the following value assessments:

| Tax Year | Land | Improvements | Total |
|---|---|---|---|
| 2014 | $890,000 | $2,647,350 | $3,537,350 |
| 2015 | $890,000 | $2,638,483 | $3,528,483 |
| 2016 | $890,000 | $2,597,386 | $3,487,386 |
| 2017 | $890,000 | $2,461,079 | $3,351,079 |

Finally, defendant's expert, also a real estate appraiser, testified as to land value and to eight comparable land sales, none of which were for truck stops/travel centers and the sales extended past Hunterdon County. The expert chose these comparable land sales as they were businesses that relied on access to major highways. He opined that the value of the land was $315,000 per acre for 2014 to 2015 and $325,000 per acre for 2016 to 2017. He arrived at the following value assessments:

| Tax Year | Land | Improvements | Total |
|---|---|---|---|
| 2014 | $3,785,000 | $2,647,350 | $6,432,350 |
| 2015 | $3,785,000 | $2,638,483 | $6,423,483 |
| 2016 | $3.910,000 | $2,597,386 | $6,507,386 |
| 2017 | $3.910,000 | $2,461,079 | $6,371,079 |

A-0915-18T3

The judge then explained that original assessments were entitled to a presumption of correctness and the taxpayer had the burden of proving that assessment is erroneous, which it can only do by introducing "cogent evidence" of true value. The judge also explained the cost approach valuation to land.

In the judge's analysis, she began with Lot 4.01 and stated that neither expert specifically valued that property. Plaintiff's expert stated that it had the same value per acre as Lot 3, which was not based on evidence submitted, and defendant's expert did not explore its value individually. She concluded that Lot 4.01 had less value than the land in Lot 3, found that plaintiff did not overcome the presumption, and affirmed the tax assessment as to that lot for all four years.[2]

As to Lot 3[3], the judge selected three comparable sales from each party's expert, and then assessed the land at a value of $200,000 per acre. The judge explained that she had "confidence in [her] land value determination because it is supported by the current land value contained within the subject property's assessment." She also explained that defendant's assessor confirmed that this value was based on "a 2006 revaluation formulated by Appraisal Systems using

_____

[2] This determination is not the subject of this appeal.

[3] The section addressing Lot 3 is incorrectly labeled "Block 30, Lot 4.01" in the tax court's decision.

A-0915-18T3

the [c]ost [a]pproach" and "was not therefore arbitrary or merely an administrative act." The judge noted that "land values do not change at the same rate as improvements because depreciation is not a factor." Adding the judge's conclusion of land value to the stipulated depreciated replacement costs, the judge concluded that the true market value on the relevant valuation dates was as follows:

| Tax Year | Land | Improvements | Total |
|---|---|---|---|
| 2014 | $2,404,000 | $2,647,350 | $5,051,350 |
| 2015 | $2,404,000 | $2,638,483 | $5,042,483 |
| 2016 | $2,404,000 | $2,597,386 | $5,001,386 |
| 2017 | $2,404,000 | $2,461,079 | $4,865,079 |

Finally, the judge applied Chapter 23, N.J.S.A. 54:51A-6(a), which requires that "in a non-revaluation year an assessment must be reduced when the ratio of the assessed value of the property to its true value exceeds the upper limit of the common level range." As such, the judge rounded the true value figures for 2014 and 2015 as follows:

| Tax Year | Land | Improvements | Total |
|---|---|---|---|
| 2014 | $2,404,000 | $2,650,000 | $5,054,000 |
| 2015 | $2,404,000 | $2,640,000 | $5,044,000 |

For 2016 and 2017, the judge calculated the following values:

9

| Tax Year | Land | Improvements | Total |
|----------|------|--------------|-------|
| 2014 | $2,404,000 | $2,376,000 | $4,780,000 |
| 2015 | $2,404,000 | $2,146,000 | $4,550,000 |

The judge then entered four judgments reflecting her decision. This appeal followed.

## II.

Our review of a Tax Court decision is limited. Estate of Taylor v. Dir., Div. of Taxation, 422 N.J. Super. 336, 341 (App. Div. 2011). The Tax Court's factual findings "will not be disturbed unless they are plainly arbitrary or there is a lack of substantial evidence to support them." Yilmaz, Inc. v. Dir., Div. of Taxation, 390 N.J. Super. 435, 443 (App. Div. 2007) (quoting Alpine Country Club v. Borough of Demarest, 354 N.J. Super. 387, 390 (App. Div. 2002)). In our review, "we take into account the special expertise of Tax Court judges in matters of taxation," Dover-Chester Assocs. v. Randolph Township, 419 N.J. Super. 184, 195 (App. Div. 2011), and a tax judge's "findings will not be disturbed unless they are plainly arbitrary or there is a lack of substantial evidence to support them," Jablin v. Borough of Northvale, 13 N.J. Tax 103, 107 (App. Div. 1991). Thus, we examine "whether the . . . findings of fact are supported by substantial credible evidence allowing due regard to the Tax Court's expertise and its ability to assess credibility." Id. at 108. However, our

review of the Tax Court's legal conclusions is de novo. Advance Hous., Inc. v. Township of Teaneck, 215 N.J. 549, 566 (2013).

III.

We turn first to defendant's contention that the Tax Court judge should have granted its motion for dismissal under Rule 4:37-2(b) because plaintiff did not present sufficient proofs on its case to overcome the presumption of correctness of defendant's assessment. Specifically, defendant argues that plaintiff's expert's comparable land sales were for properties that were not truck stops/travel centers, were not used for similar purposes, and did not have a similar HBU. Defendant contends that the HBU "deficiency in [p]laintiff's proofs should have precluded the [judge] from considering any of [p]laintiff's [expert's] . . . comparable sales as evidence of the value of the subject [property]." As such, defendant argues that plaintiff's appeal should have been dismissed under Rule 4:37-2(b). We disagree.

When examining a taxpayer's challenge to a real estate tax assessment, it is well-settled such assessments are "entitled to a presumption of validity." MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998).

> The presumption remains "in place even if the municipality utilized a flawed valuation methodology,

11

so long as the quantum of the assessment is not so far removed from the true value of the property or the method of assessment itself is so patently defective as to justify removal of the presumption of validity."

[City of Newark v. Township of Jefferson, 31 N.J. Tax 303, 316 (Tax 2019) (quoting Transcon. Gas Pipe Line Corp. v. Bernards Township, 111 N.J. 507, 517 (1988)).]

"[T]he appealing taxpayer has the burden of proving that the assessment is erroneous." Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985). "The presumption of correctness . . . stands, until sufficient competent evidence to the contrary is adduced." Little Egg Harbor Township v. Bonsangue, 316 N.J. Super. 271, 285-86 (App. Div. 1998).

Cogent evidence of true value is necessary to meet that burden; the evidence must be "definite, positive and certain." Pantasote Co., 100 N.J. at 413 (quoting Aetna Life Ins. Co. v. City of Newark, 10 N.J. 99, 105 (1952)). That evidence includes proof of a different true value or "sufficient collateral grounds, such as an assessment totally unrelated to true value." Id. at 417. However, "the plaintiff's evidence 'must be based on sound theory and objective data, rather than on mere wishful thinking.'" City of Newark, 31 N.J. Tax at 317 (quoting MSGW Real Estate Fund, LLC, 18 N.J. Tax at 376).

Additionally, the evidence "must be 'sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment.'" W. Colonial Enters., LLC v. City of East Orange, 20 N.J. Tax 576, 579 (Tax 2003) (quoting Lenal Props., Inc. v. City of Jersey City, 18 N.J. Tax 405, 408 (Tax 1999), aff'd, 18 N.J. Tax 658 (App. Div. 2000)), aff'd, 21 N.J. Tax 590 (App. Div. 2004). If "sufficient competent evidence is produced and the presumption overcome, . . . [t]he court must then turn to a consideration of the evidence adduced on behalf of both parties and conclude the matter based on a fair preponderance of the evidence." Ford Motor Co. v. Township of Edison, 127 N.J. 290, 312 (1992) (quoting Pennwalt Corp. v. Township of Holmdel, 4 N.J. Tax 51, 55 (Tax 1982)).

Rule 4:37-2(b) allows a defendant, "without waiving the right to offer evidence in the event the motion is not granted," to "move for a dismissal of the action or of any claim on the ground that upon the facts and upon the law the plaintiff has shown no right to relief." "[S]uch motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." Ibid. "We review the trial court's grant of [a] motion[] for involuntary dismissal of [a] . . . claim, filed pursuant to Rule 4:37-

2(b)" by applying the same standard as the trial court. ADS Assocs. Grp., Inc. v. Oritani Sav. Bank, 219 N.J. 496, 510 (2014).

In a challenge to a tax assessment, to defeat a motion under Rule 4:37-2(b), there must be enough evidence to raise a "debatable question as to the validity of the assessment." MSGW Real Estate Fund, LLC, 18 N.J. Tax at 376. In determining whether a plaintiff established a debatable question, the court "is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the" plaintiff. Id. at 378 (quoting Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969)).

Here, in deciding defendant's motion, the judge observed it was a "very close" call. However, she concluded that "the opinions of value offered by [plaintiff's] expert, [which] were based on [the] accepted methodologies for determining the value of real property, and if accepted as true, raised doubt in . . . [her] mind [with respect] to whether the assessments [on the subject property] exceeded the market value for the [subject] tax years . . . ."

Plaintiff's evidence of value came from its expert, Joseph Hiller, who was qualified without objection as a real estate appraisal expert. Hiller's testimony focused on the value that should be given to the land component under the cost approach, because, as noted, the parties agreed to the value of the improvements.

Hiller testified that he inspected the property three times. He testified as to the mixed use of the property as a truck stop/travel center and opined that, under the zoning ordinance, "[s]ome of the individual uses are permitted but not the combined operation of the truck stop." He noted that the zoning for the subject property did not include a truck stop as a permitted use. He stated that "[t]ypically something like this has been in place for a long period of time and predates the zoning ordinance, so we consider this a legal nonconforming use of the site."

To determine value, Hiller compared other sales to the subject property "in terms of things like access, visibility, infrastructure, utilities, proximity to highway, visibility from the highway and [he] make adjustments." He looked for sales of property lacking full infrastructure "along the Route 78 corridor." He testified that the lack of public sewers and the need for a retention basin was atypical for commercial properties. He considered this a significant factor because the lack of services was "something that this property has that causes additional cost for the property owner." He knew this based on his "thirty plus years of experience and . . . talking to other participants in the market."

Hiller did "extensive research" but could not identify a recent land sale where the property could be developed as a truck stop/travel center. He searched

15

sales throughout New Jersey going as far back as 2010. Finding no sales of land used for a truck stop anywhere in the state, Hiller focused on sales in Hunterdon County that he considered comparable. He personally inspected all the comparable properties.

Hiller acknowledged that none of his comparable properties had sold for use as a truck stop. When asked whether it was "common when using a cost approach" to consider sales of land that were not used for the HBU of the subject property, Hiller explained:

> Sometimes you're forced to do that if the market data is just simply not available. The preference would be to find eight identical sales of sites that were all developed as travel centers but they don't exist or I certainly was not able to locate any so in cases like that, again we still have to appraise the property. So we rely upon what we think is the best comparative sales data we can find which in this case I determined to be Hunterdon County, specifically . . . located along that Route 78 corridor. Some very close, some a little further away but still along that corridor with limited infrastructure because again, a site like the subject property without sewer and water access, has limitations in terms of what somebody can do on that site in terms of waste . . . disposal. There's just, there's a potential pool of investors that will buy a property and that pool is limited or reduced by people who need the infrastructure, the sewer and the water who just can't utilize a site like this to its full extent. And because of that, that's why I thought it was essential to find sites that were lacking infrastructure similar to the subject property.

He acknowledged that it "would not be [his] first choice to compare dissimilar [HBU] properties," but noted that "[s]ometimes appraisers are unable to avoid that."

The judge asked if Hiller "attempt[ed] to find comparable sales of vacant lands or recent land sales in areas that would be more accustomed to the use of truck drivers or travelers in one of the arteries that feeds the New York metropolitan north Jersey area," specifically sites within a mile or two of Interstates 80, 78, or 95. Hiller testified that he did not focus his search in this way and that there was "just no quick" method for making such a search. He said he "would probably have to go town by town to see the towns around those things and do individual searches" to obtain all such information. However, he believed the searches he conducted on "Costar" using truck stop as a key phrase were broad enough that, had there been any such sales, he would have located them with the searches that he did perform.

Hiller made adjustments accounting for the differences between the comparable sales and the subject property. He stated that the decision of what adjustments to make is "a judgment call" appraisers make.

Defendant then moved to dismiss under Rule 4:37-2(b). After considering oral arguments on the motion, and finding that her decision was "very close,"

the judge denied the motion. She found that if plaintiff's expert's opinion was accepted as true, that would have created "a doubt in the court's mind with respect to whether the assessment on the subject property exceeded the true market value . . . ." Although she found issues with the comparable land sales provided by plaintiff's expert and she did not believe he included the "entirety of vacant land sales" appropriate here, the judge "giving [plaintiff] the benefit of the doubt and looking most favorably" at the evidence provided, denied the motion.

Against this background and applying the appropriate standard under Rule 4:37-2(b), we conclude that the Tax Court judge did not err in denying defendant's motion. Hiller used the cost approach to valuation, searched for land sales throughout the state with the same zoning or the same HBU. When no such sales could be found, he selected comparable sales based on similarities he deemed particularly significant, specifically land with limited infrastructure located in Hunterdon County along the Route 78 corridor. Hiller explained why he selected land sales in Hunterdon County lacking infrastructure and why, in his judgment, these were appropriate criteria. He then made adjustments that, in his judgment, addressed the differences between the property and the comparables he selected.

We reject defendant's arguments to the contrary because they ignore the applicable standard correctly applied by the judge at trial. Defendant takes issue with the criteria Hiller used in evaluating comparable sales and with some of the adjustments he made, all of which would go to the accuracy of his opinion when considered at the end of the case in light of all of the evidence, including defendant's expert's opinion. However, at the end of the plaintiff's case, all favorable inferences must be considered in the favor of plaintiff.

We find no support for defendant's contentions in the cases it cited to us. For example, defendant contended that none of the comparables chosen by Hiller had the same zoning or HBU as the property, and it cites to a number of opinions in which the court declined to consider such comparables.[4] In one of the few

---

[4] See, e.g., Gale & Kitson Fredon Golf, L.L.C. v. Township of Fredon, 26 N.J. Tax 268, 283-86 (Tax 2011) (rejecting, after a trial, a plaintiff's expert's opinion that was based upon dissimilar properties because it was not convinced by a preponderance of the evidence that the assessment of a golf course was incorrect, but noting that differences between a comparable sale and the subject property would not necessarily be significant if "addressed" by the expert); Newport Ctr. v. City of Jersey City, 17 N.J. Tax 405, 417, 419-23 (Tax 1998), (excluding, at trial, evidence of some comparables with significantly dissimilar use to the subject property where an expert appraiser had also located numerous other comparables with the same use).

City of Newark, a case decided while this appeal was pending, and, unlike the present matter, was a sales comparison approach case, in which the parties did not stipulate as to the HBU. 31 N.J. Tax at 314, 322. However, as here, the Tax

cases cited by defendant dealing with a motion to dismiss under Rule 4:37-2(b),

S & R Realty v. Town of Kearny, 20 N.J. Tax 488, 492 (Tax 2001), aff'd, 21

N.J. Tax 105 (App. Div. 2003), the issue was not just about the use of

comparables with a different HBU and zoning than the subject property. It also

focused upon the plaintiff's appraiser inappropriately ignoring the existence of

a sizeable and usable basement at the subject property, treating the improvement

on the property as a 284,110 square foot building when it should have been

considered a 423,532 square foot building. Id. at 491-92.

In addition, unlike the present case, the appraiser in S & R Realty used the

sales comparison approach to valuation rather than the cost approach. Id. at 491.

That approach requires a closer similarity between the subject property and the

comparables than the cost approach. See TD Bank v. City of Hackensack, 28

---

Court judge rejected the taxing authority's motion under Rule 4:37-2(b), id. at 317, proceeded to trial before it rejected the taxpayer's expert's conclusions as to the HBU, id. at 321, and found that the expert's application of the sales comparison approach was "seriously flawed" because he used the wrong HBU, id. at 322. The Tax Court concluded that "[u]nder the sales comparison approach, property selection cannot be undertaken in a vacuum without regard to a property's [HBU]." Id. at 323. The court also rejected the taxing authority's expert's opinions, noted that it must still make "an independent determination of true value on the basis of those portions of the experts' testimony which the court [found] credible . . . [, but because] there [was] insufficient credible evidence for the court to make an independent determination of true value. Consequently the assessments [were] affirmed." Id. at 327-28 (citation omitted).

N.J. Tax. 363, 404 (Tax 2015) ("The cost approach is more often used . . . where there is a lack of market activity, preventing use of [the sales comparison approach], or where there is proposed construction, special purpose, or other properties not frequently exchanged on the market.  'The cost approach is particularly important when a lack of market activity limits the usefulness of the sales comparison approach . . . .'"  (Citations omitted)); see also City of Atlantic City v. Boardwalk Regency Corp., 19 N.J. Tax 164, 174 (App. Div. 2000) (explaining that an appraiser used the cost approach instead of the sales comparison approach because "defendant's property [was] 'an extremely unique parcel of land'").  In S & R Realty, the court observed, "[e]vidence of comparable sales is effective in determining the value of property only where there is a substantial similarity between the properties so as to admit of reasonable comparison."  Id. at 493.

The sales comparison approach to valuation treats the land and improvements to the land as a single component, so "sales are deemed comparable where they show comparable building ratios, functional similarities, proximity of sales dates to assessing dates, similarity of age, construction, condition, and size." Ibid. (citing Shulton, Inc. 7 N.J. Tax at 218).  In contrast, the cost approach is employed specifically where existing comparables are too

dissimilar to a property to make the sales comparison approach effective.  See TD Bank, 28 N.J. Tax. at 380 ("The only means for valuing a special purpose property is via the cost approach [rather than another approach] because there will be insufficient comparable market transactions.").

Moreover, in some circumstances, comparables that differ significantly from the subject property might be properly considered.  See, e.g., Linwood Props., Inc. v. Fort Lee Borough, 7 N.J. Tax 320, 336 (Tax 1985) (noting that a "vast difference in the size" between the subject land and other tracts selected as comparables "may somewhat diminish the weight to be attributed to them but it does not disqualify them from consideration"); Owens-Illinois Glass Co. v. Bridgeton, 8 N.J. Tax 495, 509 (Tax 1986) (holding that a difference in topography did not disqualify a comparable).  Comparables must only have "sufficient similarity in some significant respects" to the subject property "to permit the expert testifying, or the fact-finder, to draw rational probative valuation inferences from the sales cited, after weighing and allowing for such differences."  Ford Motor Co., 127 N.J. at 307 (quoting Township of Moorestown v. Slack, 85 N.J. Super. 109, 114 (App. Div. 1964)).

Whether sufficient similarity exists between a comparable and the subject property "is a question of fact."  S & R Realty, 20 N.J. Tax at 493.  "[T]rial

court[s] must be granted a wide discretion in determining the admissibility of sales sought to be relied on as comparable." Ibid. (citing Ford Motor Co., 127 N.J. at 307); see also Southbridge Park, Inc. v. Borough of Fort Lee, 201 N.J. Super. 91, 94 (App. Div. 1985) (noting that judges in the Tax Court have special expertise and their findings will not be disturbed unless they are plainly arbitrary or there is a lack of substantial evidence to support them). The weighing of the evidence adduced on plaintiff's case is not a function to be performed in response to Rule 4:37-2(b) motion.

We similarly reject defendant's argument that "the [HBU] deficiency in [p]laintiff's proofs should have precluded the [trial judge] from considering any of [p]laintiff's [a]ppraiser's allegedly comparable sales as evidence of the value of the subject premises." Defendant's contention that the judge was precluded as a matter of law from considering comparable properties selected by a qualified appraiser using accepted methodology simply because the HBUs of the properties are dissimilar is contrary to case law.[5] See Ford Motor Co., 127 N.J.

---

[5] In City of Newark, the Tax Court provided the following explanation of HBU:

> The court must determine the [HBU] of the property in order to compute the true value of the property. "Any parcel of land should be examined for all possible uses and that use which will yield the highest return should

at 307; <u>Slack</u>, 85 N.J. Super. at 114-15. The court has discretion to consider such comparables as competent and cogent evidence, particularly when viewing that evidence in the most favorable light. <u>See Slack</u>, 85 N.J. Super. 114 ("Precise guidelines as to degrees of similarity requisite to admissibility of comparable sales cannot be fixed. Much discretion must be reposed, in this regard, in the trial judge."); <u>Acocella v. Cedar Grove Township</u>, 29 N.J. Tax 325, 345 (Tax 2016); <u>Lenal Props., Inc.</u>, 18 N.J. Tax at 408.

In addition, under defendant's theory that the court is precluded from considering comparables that differ significantly from the subject property, unique or special purpose properties would often be impossible to evaluate for true market value. Presumably, however, tax assessors would not be precluded

<hr>

> be selected." <u>Inmar Assocs., Inc. v. [Township] of Edison</u>, 2 N.J. Tax 59, 64 (Tax 1980) (citation omitted). "Accordingly, the first step in the valuation process is the determination of the [HBU] for the subject property." <u>American Cyanamid Co. v. [Township] of Wayne</u>, 17 N.J. Tax 542, 550 (Tax 1998), <u>aff'd</u>, 19 N.J. Tax 46 (App. Div. 2000). "The concept of [HBU] is not only fundamental to valuation but is a crucial determination of market value. This is why it is the first and most important step in the valuation process." <u>Ford Motor Co. [v. Edison Township]</u>, 10 N.J. Tax [153,] 161 [(Tax 1988), <u>aff'd</u>, 12 N.J. Tax 1990 (App. Div. 1990)].
>
> [<u>City of Newark</u>, 31 N.J. Tax at 318.]

from assigning value to those properties for assessment and tax collection purposes. See Cigolini Assocs. v. Borough of Fairview, 208 N.J. Super. 654, 665 (App. Div. 1986) ("[I]t is not unusual for property which is difficult to value to be assessed."). Defendant's approach would have the practical effect of creating a category of properties as to which the tax assessor's assigned value could never be successfully challenged, regardless of how extreme it might be. The law does not allow for this result.

IV.

Next, we consider defendant's contention that, even assuming plaintiff's case properly survived its Rule 4:37-2(b) motion, the judge made several errors in ultimately concluding that the true market value of the land component of the property was $200,000 per acre. Defendant contends the judge "erred in finding market value" as plaintiff's proofs were insufficient to enable the court to arrive at a market value for the premises. Defendant alleges that the tax judge did not conduct a proper "consideration of the evidence" by failing to ensure that plaintiff's expert's opinion was substantiated. According to defendant, plaintiff's comparable sales were not comparable, and defendant's expert's sales were

"better comparables." Moreover, defendant argues that the tax judge's determined value of $200,000 per acre was "completely arbitrary."[6]

To the extent defendant contends that the judge improperly performed her function, we disagree. However, we are constrained to remand the matter to the judge because we cannot determine how the judge established the ultimate value for Lot 3.

At the outset, we acknowledge that our deference to Tax Court judges' expertise extends to their analysis of comparables. We "recognize the special expertise of the Tax Court judges to analyze allegedly comparable sales and . . . to either utilize or reject examples in a particular case." Mays Ctr. Assocs. Corp. v. Township of Rockaway, 15 N.J. Tax 168, 173 (App. Div. 1994). Tax Court judges "must be granted a wide discretion in determining the admissibility of

---

[6] Defendant contends that the tax judge erred in using the land component of the total assessment and/or the assessor's testimony as proof of or confirmation of the actual market value of the subject land. Defendant argues that the testimony of their own tax assessor did not prove land value because it included only the 2006 report, which was no longer valid for the years challenged and, nonetheless, constituted inadmissible hearsay. Defendant cites to numerous cases in which it argues courts have rejected the use of land assessments to determine property value. Defendant also contends that appeals "cannot be conducted piecemeal"—that is, they cannot separate the land assessment and improvement assessment and challenge only one part. Defendant then quotes a portion of the tax judge's opinion and follows with a list of "numerous errors of law and fact" contained within it. According to defendant, these errors demonstrate that plaintiff failed to overcome the presumption of correctness.

sales sought to be relied on as comparable." S & R Realty, 20 N.J. Tax at 493 (citing Ford Motor Co., 127 N.J. at 307).

At trial here, the judge considered Hiller's testimony about value as described above. After the judge denied defendant's motion for dismissal, defendant's expert Timothy Hoffman testified.

Hoffman followed an identical methodology as Hiller in valuing the land component of the property. He searched for land sales in New Jersey that had been or could be developed into a truck stop, but he found nothing to satisfy this criterion. Since he could not find truck stop sales, the criteria he considered important for identifying comparable land sales were similar zoning, lot size, and "access to major transportation routes." This included areas in close proximity to Hunterdon County with similar economic characteristics and near the New Jersey Turnpike, Interstate 78, or Interstate 287. His comparables were "all developable parcels" that were "purchased for a business function there whether it's self-storage, whether it's a distribution facility, whether it was previously a retail site but then subsequently reapproved for residential use of some kind."

Hoffman testified that, when unable to locate sales of land for the same purpose as the subject property, "[a]t that point in time[,] an appraiser is

27

challenged with the decision, do I extend the market area to get a similar land sale of some kind or do I stay local . . . ." He opted not to stay local because he believed that the "[u]tility of the subject site [was] not limited to Hunterdon County or Warren County . . . ." In his view, "reaching out to a much broader area for comparables [was] more appropriate than getting something down the road that [he would] have to go through a windy road to get to." After identifying what he considered to be the most comparable sales, Hoffman made adjustments to compensate for the differences between the comparables and the property.

Thus, like Hiller, Hoffman agreed that no directly comparable land sales in New Jersey could be located and that, in such a case, an appraiser must use judgment to select land sales as similar as possible, making appropriate adjustments.

In her decision, the judge stated that this case presented her with difficulty in "fairly interpret[ing], analyz[ing], and reconcile[ing] the comparable land sales provided by the experts, when by necessity [the sales] have different zoning and [HBUs]." While she would prefer to have comparable sales with similar zoning, she stated it "would be inequitable to hold a taxpayer to a standard that cannot be met." With that, the judge gave greater weight to those

28

comparable land sales that had a commercial zoning, were located in the Highlands region, and/or in close proximity to highways "with heavy truck volume." The comparable land sales she found most credible as to plaintiff's expert's sales included land in Hunterdon county that was zoned for office space near Route 202, property zoned for commercial purposes which had direct access to Route 22, and farmland zoned for research, office, and manufacturing on the corner of Route 31. As to defendant's expert's comparable land sales, the judge chose a commercial business close to Interstate 287, property zoned for offices near Hunterdon county and Route 22, and an industrial zoned property in Essex County that abutted Route 78. Based on these six comparable land sales and defendant's assessor's current land assessment of the property, the judge concluded that the land value of the property was $200,000 per acre.

In cases where, as here, "there may [not] have been enough evidence to overcome the presumption of correctness at the close of plaintiff's case-in-chief, the burden of proof remain[s] on the taxpayer throughout the entire case . . . to demonstrate that the judgment under review was incorrect." City of Newark, 31 N.J. Tax at 317 (second and third alterations in original) (quoting Ford Motor Co., 127 N.J. at 314-15). At trial, "the court must . . . proceed[] to decide the appeal based on weighing and analyzing the evidence." City of Newark, 31 N.J.

Tax at 316. After a trial, a Tax Court judge must "appraise the testimony, make a determination of true value and fix the assessment." Rodwood Gardens, Inc. v. City of Summit, 188 N.J. Super. 34, 38 (App. Div. 1982).

"The Tax Court has the duty to apply its own judgment to valuation data submitted by experts in order to arrive at true value." Glenpointe Assocs. v. Township of Teaneck, 241 N.J. Super. 37, 46 (App. Div. 1990). Even "when confronted by . . . totally deficient valuation methodology, which provides no reliable indication that the quantum of the assessment is itself reasonable, the Tax Court is obligated to exercise its power to make an independent assessment based on the evidence before it and data properly at its disposal." Transcon. Gas Pipe Line Corp., 111 N.J. at 538.

However, the judge's "right to make an independent assessment is not boundless; it must be based on evidence before [him or her] and data that are properly at [his or her] disposal." Glenpointe Assocs., 241 N.J. Super. at 46 (citing F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 430 (1985), superseded by statute on other grounds, N.J.S.A. 54:3-21). The court "must not arbitrarily assign a value to the property which is not supported in the record." Ibid.; see also Township of Warren v. Suffness, 225 N.J. Super. 399, 414 (App. Div. 1988).

We conclude that to a point, the judge properly considered the parties' proofs and correctly satisfied her obligation, "[o]nce [she found] that the presumption has been overcome by cogent evidence, [to] . . . independently determine true value." Brae Assocs. v. Park Ridge Borough, 19 N.J. Tax 306, 312 (App. Div. 2001); see also Ford Motor Co., 127 N.J. at 312 (noting that, once the presumption is overcome, the "court must then turn to a consideration of the evidence adduced on behalf of both parties and conclude the matter based on a fair preponderance of the evidence" (quoting Pennwalt Corp., 4 N.J. Tax at 55)). After considering the evidence at the trial, the judge conducted an analysis and weighed all the evidence to determine if plaintiff has established by a preponderance of the evidence that the assessed value of the property at issue was incorrect.

Here, the judge made numerous findings that were supported by the record and well within her discretion, including that (1) the property was "a limited market, special purpose property," (2) the location of the property on a "major transportation and trucking route" was very significant, (3) Hiller was correct and Hoffman incorrect in concluding that the truck stop/travel center was a "pre-existing, non-conforming use" rather than a "legal, conforming use" under the zoning law, (4) the HBU of the property "is its continued use as a truck

31

stop/travel center," which the parties stipulated to at trial, (5) both experts encountered "credible obstacles to identifying comparable sales of vacant land with the same unique [HBU] and zoning of the property," (6) comparable sales of land "zoned commercial zoning, that are in the Highlands region, and on or near roads or highways with heavy truck volume" were entitled to greater weight than other comparable sales, and (7) each expert presented three comparables that were the "most credible." However, there is no explanation for how any of the facts the judge found led her to the conclusion that the land value of the property was $200,000 per acre.

The judge did not detail how she weighed the evidence or explain the reasoning that led her to fix $200,000 per acre as the value of the land component of the property. That omission impedes our appellate function. A trial court may not simply provide naked conclusions, but "must state clearly its factual findings and correlate them with the relevant legal conclusions." Curtis v. Finneran, 83 N.J. 563, 570 (1980); see also Schwarz v. Schwarz, 328 N.J. Super. 275, 282 (App. Div. 2000) (noting that, in order to achieve a "fair resolution of a case," the trial court must articulate the reasons for its decision). "Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990). "In the

absence of reasons," the reviewing court is "left to conjecture as to what the judge may have had in mind." Ibid.

Although there are numerous methodologies the judge could have adopted in reaching her conclusion, neither we nor the parties should have to speculate how the judge reached her ultimate conclusion, especially in light of the disparity between Hiller's and Hoffman's opinions about value.

Moreover, although it is not clear from her decision, to the extent the judge relied upon defendant's assessor's testimony,[7] or on averaging the comparable

---

[7] In her written decision, the Tax Court judge stated the following:

> The court has confidence in its land value determination because it is supported by the current land value contained within the subject property's assessment. Although as a general rule, the land assessment cannot be evidence of value because the allocation between land and improvements is viewed to be merely an administrative act, the evidence in this case was presented differently. The testimony of the borough assessor clearly and unequivocally was that the land assessment was based on a $200,000 per acre value attributed to a 2006 revaluation formulated by Appraisal Systems using the Cost Approach. The $200,000 price per acre was not therefore arbitrary or merely an administrative act. Also land values do not change at the same rate as improvements because depreciation is not a factor. So while not dispositive of value, the court cannot conceive of any reason why given the assessor's testimony, the land assessment

sales identified by each expert, that reliance is misplaced. As to the assessor's testimony as a fact witness, she advised that the values established by her office were calculated by an outside service using a formula about which there was no testimony as to how that entity determined values. There was no basis to test its accuracy.

Moreover, simply accepting the existing land assessments and applying it to the stipulated cost of the depreciated improvements is not permitted. It is the whole assessment that is being challenged, not just one component. "[T]he division of an assessment between [the] land and improvements is an administrative action that does not create two separately contestable assessments." Brown v. Borough of Glen Rock, 19 N.J. Tax 366, 375 (App. Div. 2001); Tex. E. Transmission Corp. v. East Amwell Township, 13 N.J. Tax 24, 34 (Tax 1992), aff'd, 18 N.J. Tax 126 (App. Div. 1999).

As to averaging, we have in an earlier opinion rejected that process as a substitute for the judge's own "weigh[ing] and evaluat[ing] the experts' opinions, including their credibility." Pansini Custom Design Assocs., LLC v. City of Ocean City, 407 N.J. Super. 137, 144 (App. Div. 2009). We concluded that

cannot be considered as supporting the other credible
evidence establishing value.

"averaging cedes this unique responsibility to a simple mathematical formula and is an unacceptable methodology for fulfilling one's role as a fact-finder." Ibid. On remand the judge should not rely upon any of these considerations.

On remand, the judge may, in her discretion, consider whatever additional evidence she deems appropriate, if any. Also, by remanding this aspect of the matter, we do not imply one way or the other what the outcome should be after the judge reconsiders the evidence before issuing her more detailed explanation of her conclusion as to value.

V.

Finally, we find defendant's remaining contentions on appeal to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We only observe that as to its contention that the judge initially ruled plaintiff failed to meet its burden to rebut the presumption of correctness and then the judge changed her determination without explanation, that contention is belied by the record.

Affirmed in part and remanded in part for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

35