733 A.2d 1204 (1999)
323 N.J. Super. 550
B.F. GOODRICH COMPANY, Plaintiff-Appellant/ Cross-Respondent,
v.
OLDMANS TOWNSHIP, Defendant-Respondent/ Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted June 8, 1999.
Decided July 12, 1999.
Robert G. Mazeau, Hackensack, for plaintiff-appellant/cross-respondent.
Archer & Greiner, Haddonfield, for defendant-respondent/cross-appellant (Richard M. Conley, Flemington, of counsel and on the brief; Jeffrey D. Gordon, Haddonfield, on the brief).
Before Judges LONG and CARCHMAN.
PER CURIAM.
Plaintiff B.F. Goodrich Company appeals from a judgment of the Tax Court assessing the site containing plaintiff's latex manufacturing facility at $3,717,384 for the 1995 tax year and $3,611,637 for the 1996 tax year, an increase in excess of $2,200,000 from the original County Board of Taxation assessment. Defendant Oldmans *1205 Township cross-appeals arguing that the Tax Court should have included an entrepreneurial profit of ten percent in the assessment. We affirm the judgment in all respects.
Plaintiff challenges numerous rulings of the trial judge, including two discretionary rulingsher denial of the admission of plaintiff's expert's corrected appraisal report into evidence, and the denial of discovery of defendant's expert's prior appraisal reportsand three factual determinationsthe refusal to include a contingency factor in calculating reproduction cost, the alleged insufficient allocation for functional obsolescence, and the allocation of interest on construction loans as a soft cost.
We have reviewed the trial transcript and entire record in this matter and conclude that the arguments advanced by plaintiff are without merit. R. 2:11-3(a)(1)(E). We do, however, note that despite the trial judge's ruling not to admit plaintiff's expert's appraisal report into evidence, the trial judge did consider his corrected testimony in her evaluation of the evidence presented. Any asserted error in this regard is, at best, harmless. R. 2:10.2.
The primary issue in dispute in this case was whether certain exterior piping connected to the manufacturing building was part of the "production process" and thus nontaxable as business personal property under the Business Retention Act (the Act), N.J.S.A. 54:4-1.13 to -1.16. Judge Axelrad concluded that the piping was not part of the production process occurring within the building.
The subject property included a manufacturing and warehouse building and a separate office facility together with miscellaneous improvements on the site. Circling the site were pipe racks as well as piping and other components used to transport raw materials, steam and cooling water to the latex plant. In determining the applicability of the Act[1], the judge was required to factually determine "the point of connection with the machinery, apparatus, or equipment of [the latex] production process." She concluded:
The court finds that, for purposes of the Business Retention Act, the process starts inside the manufacturing building and the point of connection is the meter on the fourth floor where the pipes merge and materials are introduced into the latex manufacturing reactors, tanks, and processing equipment. N.J.S.A. 54:4-1.15 and N.J.A.C. 18:12-10.1 define "production process" as the "process commencing with the introduction of raw materials or components into a systematic series of manufacturing, assembling, refining or processing operations and ceasing when the product is in the form in which it will be sold to the ultimate consumer." Taxpayer's operation involves the chemical processing of the raw materials of vinyl chloride and demineralized water, which are mixed together, heated and cooled in reactor tanks, piped to blender and mixing tanks and strained, all inside the manufacturing building, emerging in the intermediate form of liquid latex and shipped in drums or tank cars. In fact, since each component is transported from the *1206 storage tanks to the building in a separate pipe, it is clear that taxpayer does not want chemical reactions occurring prior to the time the raw materials enter the manufacturing plant and are sent into the reactors in regulated amounts and intervals. Taxpayer's facility is not a water treatment plant. The demineralized, clarified, chilled, and heated water are raw materials in the process to the same extent as the chemicals; they are mixed with the chemicals, used to heat and cool the reactors so the polymerization can occur, and used in a variety of ways in the balance of the latex manufacturing process.
[17 N.J. Tax 114, 129-30 (Tax 1997) (emphasis added).]
We conclude that the record well supports this finding and interpretation of the statute. We, accordingly, affirm the judgment for the reasons set forth in Judge Axelrad's comprehensive and thoughtful opinion which is reported at 17 N.J. Tax 114 (Tax 1997).
Affirmed.
NOTES
[1] The relevant provision of N.J.S.A. 54:4-1 defines the property subject to taxation:

Real property taxable under this chapter means all land and improvements thereon and includes personal property affixed to the real property or an appurtenance thereto, unless:
....
b. The personal property so affixed is machinery, apparatus, or equipment used or held for use in business and is neither a structure nor machinery, apparatus or equipment the primary purpose of which is to enable a structure to support, shelter, contain, enclose or house persons or property. For purposes of this subsection, real property shall include pipe racks, and piping and electrical wiring up to the point of connections with the machinery, apparatus, or equipment of a production process as defined in this section. (emphasis added).