PER CURIAM.
Park Ridge Borough (Park Ridge) appeals from the Tax Court’s determination of the true value of commercial property for the tax years 1990 through 1995. The property consists of a 226,568 square foot building on 14.56 acres of land. For the tax years in question, Park Ridge assessed the property at $5,096,000 for the land and $34,759,000 for the improvements, for a total of $39,855,000. The taxpayer, Brae Associates (Brae Associates) c/o Hertz Realty (Hertz) appealed to the Tax Court, which entered judgments setting the true value of the property at $34,078,750 for tax year 1990; $34,006,930 for tax year 1991; $33,497,660 for tax year 1992; $33,236,450 for tax year 1993; $33,150,900 for tax year 1994; $32,630,600 for the tax year 1995. Park Ridge appealed and Brae Associates cross-appealed.
On its appeal from the Tax Court, Park Ridge argues that the Tax Court judge erred (1) in not dismissing Brae Associate’s complaint for failure to overcome the presumption of correctness; (2) by not including a factor for entrepreneurial profit in the property’s development costs; and (3) in permitting a deduction for physical depreciation/functional obsolescence of the building.
On its cross-appeal, Brae Associates argues that the Tax Court judge erred (1) in concluding he was bound by precedent to use the cost approach; (2) by allowing Park Ridge to advocate positions it knew were false and misleading;[1] (3) by failing to draw a *310 negative inference from Park Ridge’s failure to call its own expert whose original valuation was lower than the municipality’s assessment of value; (4) by applying the doctrine of collateral estoppel and law of the case to preclude plaintiff from (a) proving the character of the building as a general office use building, and (b) from using the income method in reaching true value; (5) by fading to consider relevant testimonial and documentary evidence and legal argument; (6) by failing to value the property based on its true value rather than on its “use value” as a corporate headquarters; (7) by permitting Park Ridge to apply a “corporate headquarters label” as an appraisal theory when no such theory is recognized as valid in this State;[2] and (8) in rejecting a deduction for economic/external obsolescence. We affirm.
We have thoroughly reviewed the record and briefs, in light of the applicable law, and conclude that the arguments raised by both parties are without sufficient merit to require a comprehensive written decision. R. 2:11—3(e)(1)(A) and (E). We are satisfied there is substantial credible evidence in the record to sustain the judge’s valuations of the subject property for each year, and we affirm substantially for the reasons expressed by Judge Kahn in his opinion decided January 28, 1998. 17 N.J. Tax 187 (1998). Nonetheless, we deem it appropriate to provide some further comment.
Because the facts are fully set out in the reported opinion of the Tax Court, 17 N.J. Tax 187, we need not repeat them at length here. We simply include a brief statement of facts to provide some context for our comments.
The property is located at 225 Brae Boulevard in Park Ridge and, during the years 1990 through 1995, was occupied exclusively by Hertz. The property was developed pursuant to a joint venture agreement entered into on December 30, 1986 between *311 Joseph L. Muscarelle, Inc. (Muscarelle) and Hertz. Pursuant to the agreement, Muscarelle constructed an office building for Hertz’s use. As part of the venture, Muscarelle gave Hertz a 25% ownership interest in the building. The parties also executed a twenty-year lease. Muscarelle later assigned the lease to Brae Associates which became the landlord.
Completion of construction occurred in 1988 at a cost of $29,017,977, with a stipulated land value of $5,475,000 for the relevant years. Although the building was especially designed for Hertz’s occupancy, and was, in fact, occupied solely by Hertz, it was constructed to allow future modification for multi-tenant use.
At the trial, which spanned twenty-one days, plaintiff’s expert, Dale R. Kilpatrick, MAI, real estate appraiser, analyzed all three methods of valuation (cost approach, comparable sales approach, and income approach) in forming his opinion of true value. He determined that the highest and best use of the property was that of a general purpose office building and opined that the income approach should be utilized in determining value.
Park Ridge did not present any evidence at trial.
At the conclusion of the taxpayer’s case, based on the evidence presented, Judge Kahn determined by the preponderance of the evidence that the highest and best use of the property for the years in question is that of a “single user corporate headquarters,” and not a multi-tenanted facility, relying on the evidence presented by plaintiffs witnesses. 17 N.J. Tax at 195-96. Based on the valuation approaches discussed by Mr. Kilpatrick, the judge concluded that the cost approach was the only reliable method of valuing the property.[3] Ibid.
*312 We first address Park Ridge’s contentions that Brae Associates failed to overcome the presumption of validity that ordinarily attaches to a municipality’s tax assessments. It is axiomatic that the municipality’s assessment is entitled to a presumption of validity. Pantasote Co. v. City of Passaic, 100 N.J. 408, 412, 495 A.2d 1308 (1985). To overcome the presumption, the taxpayer must present “sufficient competent evidence ... to prove a true valuation different from the assessment.” Id. at 413, 495 A.2d 1308 (quoting Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 105, 89 A.2d 385 (1952)). The “evidence must be ‘definite, positive and certain in quality and quantity to overcome the presumption.’ ” Ibid, (quoting Aetna Ins. Co., supra, 10 N.J. at 105, 89 A.2d 385).
Once the Tax Court finds that the presumption has been overcome by cogent evidence, it must independently determine true value. Id. at 417, 495 A.2d 1308; Ford Motor Co. v. Township of Edison, 127 N.J. 290, 312, 604 A.2d 580 (1992). See also Glen Wall Assocs. v. Township of Wall, 99 N.J. 265, 280, 491 A.2d 1247 (1985) (observing that the Tax Court has an obligation to use its “special qualification^], knowledge and experience” in determining value). Because the Tax Court has special expertise in such matters, it “ ‘has not only the right[ ] but the duty to apply its own judgment to valuation data submitted by experts in order to arrive at a true value and find an assessment for the years in question.’ ” Ibid, (quoting New Cumberland Corp. v. Borough of Roselle, 3 N.J. Tax 345, 353 (1981)). In departing from the presumptively correct assessment and establishing value, the Tax Court must “support its own decision,” and, of course, “exercise its jurisdiction selectively and critically.” Pantasote, supra, 100 N.J. at 417, 495 A.2d 1308.
In his decision, Judge Kahn did not specifically state that plaintiff had overcome the presumption of correctness. However, *313 after the trial was concluded, at oral argument on the parties’ respective motions to strike portions of each other’s post-trial briefs, the subject arose. In response, Judge Kahn remarked that because he had denied Park Ridge’s motion to dismiss and allowed the taxpayer’s case to go forward, that was “some indication” that he had made a finding that Brae Associates had met its burden of overcoming the presumption of correctness.[1] The judge then explained, that it was not only his right, but his duty, under Glen Wall, supra, 99 N.J. 265, 491 A.2d 1247, to consider all of the evidence and make an independent determination of value based upon that evidence. Thereafter, Judge Kahn issued his final decision, and these appeals followed.
We have carefully reviewed the record and, although the judge did not make specific findings or conclusions with respect to the presumption of correctness, it is clear that he implicitly found that the taxpayer had overcome the presumption of correctness. Of course, the better course would have been for the judge to have made specific findings and to have given his reasons for the decision; however, any asserted error in this regard is at best harmless. R. 2:10-2.
Nonetheless, Park Ridge essentially argues that the presumption could not have been overcome and the independent valuations arrived at because the judge could not properly have relied on the evidence presented through the taxpayer’s experts, in particular, Mr. Kilpatrick. Park Ridge maintains that because Mr. Kilpatrick concluded the building was a general purpose office building and not a corporate headquarters, the expert evidence could not support the judge’s conclusion to the contrary, or form a basis for his ultimate valuations of the property.
We disagree. Mr. Kilpatrick gave extensive testimony on all three valuation methods and the factors relevant thereto. Judge Kahn was certainly free to utilize those aspects of Mr. Kilpatrick’s *314 testimony he found cogent and reject others. We perceive no error in the judge’s reliance on that evidence notwithstanding the expert’s conclusions.
Further, we reject Park Ridge’s contention that the judge erred in excluding entrepreneurial profit as. a factor in the property’s development costs. In the absence of market data demonstrating that entrepreneurial profit should be included, the judge properly excluded it. See B.F. Goodrich Co. v. Oldmans Twp., 17 N.J. Tax 114, 122 (1997), aff'd, 323 N.J.Super. 550, 733 A.2d 1204 (App.Div.1999) (observing that because the municipality failed to offer market data to support the inclusion of entrepreneurial profit as an additional cost, it would not be considered). It has been explained that “[p]roper use of the cost approach requires, not a mechanical addition of 10% for entrepreneurial profit, but a critical analysis of the property in its market on the appraisal date to determine whether cost should be adjusted upward or downward and to take account of market conditions” Id. at 122 (quoting Texas Eastern Transmission Corp. v. East Amwell Twp., 13 N.J. Tax 24, 41 (1992)). Judge Kahn extensively questioned Mr. Kilpatrick as to his conclusion that inclusion of entrepreneurial profit w^as inappropriate in this matter, and we are satisfied that the record adequately supports the judge’s findings in this respect.
We also reject Park Ridge’s argument that an entrepreneurial profit should have been included because “it makes no sense to suggest that the owner-occupier of the property spends any less time involved in the project than an ‘entrepreneur’ who is developing property for resale or investment.” Park Ridge should 'have espoused this argument at trial through an expert witness if it wished us to consider it on appeal. It did not, and, therefore, it is inappropriate for Park Ridge to urge review now.
We next address briefly and reject Park Ridge’s contention that the Tax Court judge erred by permitting a 2.5% annual cumulative deduction for “physical and functional depreciation.” Park Ridge asserts that because the building is a “corporate headquarters,” a deduction for “functional obsolescence” is im *315 proper. Mr. Kilpatrick concluded that a 2.5% “functional depreciation” rate was appropriate based on the age of the property, after employing the tables contained in the Marshall Valuation Service, which included the extended life concept. Mr. Kilpatrick’s deduction was not a deduction based on “functional or economic obsolescence.” See CPC Int'l v. Bor. of Englewood Cliffs, 193 N.J.Super. 261, 265, 473 A.2d 548 (App.Div.), certif. denied, 97 N.J. 578, 483 A.2d 124 (1984) (defining “fun ctional obsolescence”). The features that Mr. Kilpatrick considered for the deduction, namely, HVAC, electrical, acoustical ceilings, roofings, and roofing insulation, were features associated with “physical depreciation,” not “economic obsolescence.” The deduction was not for non-utilitarian features, where their cost could be recovered only in a sale to an extravagant buyer or one having Hertz’s same needs. In other words, even though the building was built to meet Hertz’s specific needs, its features were not so lavish as to preclude a 2.5% “physical depreciation” rate and, in the absence of any rebuttal evidence from Park Ridge, the Tax Court judge was certainly free to accept Mr. Kilpatrick’s opinion in this regard.
As for plaintiff’s arguments on the cross-appeal, we add only this brief comment concerning its collateral estoppel argument. Contrary to the taxpayer’s contention, as noted previously, Judge Kahn expressly declined to give preclusive effect to Judge Crab-tree’s determination on the cost approach. Accordingly, he made his own independent findings of the proper valuation approach based on the evidence. See 17 N.J. Tax at 194, 196-97. As for the corporate headquarters finding, although Judge Kahn did give effect to Judge Crabtree’s finding on this point, he also made his own independent findings based on the evidence presented.
The judgments reducing the assessments for the years 1990 through 1995 are affirmed.

 Brae Associates argues that Park Ridge acted in bad faith in remaining steadfast to the correctness of its original assessment when it knew that its own appraiser had concluded that the property was worth less and that its lax *310 assessor had lowered the assessment from $39,855,000 to $34,000,000 for the tax year .1997.

 Plaintiff argues that if such a theory is valid, we should provide a bright line rule for determining when the “corporate headquarters concept" applies.

 Judge Kahn also concluded that the taxpayer was collaterally estopped from asserting that the building was anything other than a corporate headquarters because there had been no change in the lacts surrounding the physical aspects of the building between the tax appeal filed by Brae Associates challenging the 1989 assessment of the propeity and the appeals filed for the ensuing years. Id. at 194. He based that ruling on Judge Crabtree's unreported decision which was affirmed in Brae Associates v Park Ridge Borough, 14 N.J. Tax 172 (App.Div. 1993). Judge Kahn remarked that Judge Crabtree had concluded “that (1) the *312 property is a corporate headquarters; and (2) the cost approach is the most probative approach to determine the property's true value.” 17 N.J. Tax at 192. However, Judge Kahn also made his own independent findings with respect to the highest and best use of the building and the valuation approach, as noted above. Id. at 195-96.

 Regrettably, the judge's final decision on the motion to dismiss was not transcribed and a subsequent motion to "settle the record" did not produce a decision by the judge, who stated that he could not recall his reasons for the decision.