**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0972-20

HPT TA PROPERTIES TRUST,
f/k/a TRAVELCENTERS
PROPERTIES, LP,

     Plaintiff-Respondent,

v.

BLOOMSBURY BOROUGH,

     Defendant-Appellant.

_____

> Argued January 10, 2022 – Decided March 22, 2022
>
> Before Judges Rothstadt and Natali.
>
> On appeal from the Tax Court of New Jersey, Docket Nos. 8898-2014, 2900-2015, 1751-2016 and 4400-2017.
>
> Robert F. Renaud argued the cause for appellant (Renaud Deappolonio, LLC, attorneys; Robert F. Renaud, on the briefs).
>
> Alex Paul Genato argued the cause for respondent (Archer & Greiner, PC, attorneys; Alex Paul Genato and Jennifer N. McCracken, on the brief).

PER CURIAM

In an earlier unpublished opinion, we considered defendant Bloomsbury Borough's appeal "from the Tax Court's four September 28, 2018 judgments reducing defendant's assessment of property owned by plaintiff HPT TA Properties Trust [f/k/a] Travelcenters Properties, L.P. for the years 2014 to 2017." HPT TA Prop. Tr. v. Bloomsbury Borough (HPT TA Prop. I), No. A-0915-18 (App. Div. June 23, 2020) (slip op. at 2), certif. denied, 244 N.J. 442 (2020). In our decision, we "affirm[ed] the Tax Court judge's denial of defendant's Rule 4:37-2(b) motion because plaintiff established that its evidence about value raised a debatable question as to the validity of the assessment, but . . . we [were] constrained to remand for a further explanation as to how the judge arrived at the per acre value for the property." Ibid.

The matter now returns to us after remand on defendant's appeal from the Tax Court judge's October 29, 2020 judgments, fixing the value of the subject property again at $200,000 per acre for the reasons stated in the judge's comprehensive supporting written decision.

On appeal, defendant contends the Tax Court judge erred on remand in accepting plaintiff's comparable values. According to defendant, the judge's finding of $200,000 per acre was based on an incorrect premise, leading to an

"erroneous conclusion[]."  Defendant argues that we must affirm its original assessment or conclude "that [we] nor the Tax Court can find value based on the record below," which would warrant the entry of "judgment for defendant." Finally, defendant contends, in the alternative, "the matter should be remanded to the Tax Court for retrial before a different Tax Court judge."  We disagree and affirm, substantially for the reasons expressed by the Tax Court judge in her thorough October 29, 2020 written decision.

The pertinent facts explaining the background of this matter are well known to the parties and set forth in detail in our earlier opinion.  Id. at 2-10. We need not repeat them here.  Instead, we begin by revisiting our review of the judge's 2018 decision and our instructions to the Tax Court judge to be followed on remand.

For clarity, we quote from our earlier opinion's description of the Tax Court judge's 2018 explanation as to how she reached the assessed value for each disputed year.  In our description, we stated the following:

> [T]he judge summarized the testimony at trial [as follows].  Plaintiff's expert, a real estate appraiser, testified that the [highest and best use (HBU)] of the property was "continued use as a truck stop."  He also "concentrated on the land component of the real estate" and could not find any directly comparable land sales— that is, land sales for truck stops/travel centers. Instead, he described comparable non-developed land sales,

many of which "were non-usable sales" from within Hunterdon County or dissimilar properties, including farms, streams and wetlands, undevelopable land in a preservation area, and "residentially zoned property." After using these properties and making "adjustments for conditions of sale, necessary approvals and shape and topography," he concluded that the value of the land component of the property was $60,000 per acre, plus "ten percent for entrepreneurial profit premium,[] for all [four] tax years under appeal." He combined the two lots and arrived at the following value assessments: [2014: 3,537,350; 2015: $3,528,483; 2016: $3,487,386; and 2017: $3,351,079.]

Finally, defendant's expert, also a real estate appraiser, testified as to land value and to eight comparable land sales, none of which were for truck stops/travel centers and the sales extended past Hunterdon County. The expert chose these comparable land sales as they were businesses that relied on access to major highways. He opined that the value of the land was $315,000 per acre for 2014 to 2015 and $325,000 per acre for 2016 to 2017. He arrived at the following value assessments: [2014: $6,432,350; 2015: 6,423,483; 2016: $507,386; and 2017: $6,371,079].

The judge then explained that original assessments were entitled to a presumption of correctness and the taxpayer had the burden of proving that assessment is erroneous, which it can only do by introducing "cogent evidence" of true value. The judge also explained the cost approach valuation to land. In the judge's analysis, she began with Lot 4.01 and stated that neither expert specifically valued that property. Plaintiff's expert stated that it had the same value per acre as Lot 3, which was not based on evidence submitted, and defendant's expert did not explore its value individually. She concluded that Lot 4.01 had less value than the land in

Lot 3, found that plaintiff did not overcome the presumption, and affirmed the tax assessment as to that lot for all four years.

As to Lot 3, the judge selected three comparable sales from each party's expert, and then assessed the land at a value of $200,000 per acre. The judge explained that she had "confidence in [her] land value determination because it is supported by the current land value contained within the subject property's assessment." She also explained that defendant's assessor confirmed that this value was based on "a 2006 revaluation formulated by Appraisal Systems using the [c]ost [a]pproach" and "was not therefore arbitrary or merely an administrative act." The judge noted that "land values do not change at the same rate as improvements because depreciation is not a factor." Adding the judge's conclusion of land value to the stipulated depreciated replacement costs, the judge concluded that the true market value on the relevant valuation dates was as follows: [2014: $5,051,350; 2015: $5,042,483; 2016: $5,001,386; and 2017: $4,865,079.]

Finally, the judge applied Chapter 23, N.J.S.A. 54:51A-6(a), which requires that "in a non-revaluation year an assessment must be reduced when the ratio of the assessed value of the property to its true value exceeds the upper limit of the common level range." As such, the judge rounded the true value figures for 2014 and 2015 as follows: [2014: $5,054,000; and 2015: $5,044,000].

For 2016 and 2017, the judge calculated the following values: [2016: $4,780,000; and 2017: $4,550,000].

[Id. at 6-10 (third, fourth, and seventh alteration in original) (footnotes omitted).]

5

In her 2018 written decision, the judge explained her acceptance of certain comparable sales values offered by the parties by only stating the following conclusions:

> All land has value, and the court's review of the comparable land sales offered by both experts is the best evidence available to determine the subject property's land value. In choosing the most credible land sales, the court gives greater weight to those land sales zoned commercial zoning, that are in the Highlands region, and on or near roads or highways with heavy truck volume.
>
> The court finds that the most credible land sales provided by plaintiff's expert (with an additional ten percent for entrepreneurial profit) are sale number 5 ($49,844 per acre), number 6 ($73,052 per acre), and number 7 ($59,400 per acre). The most credible land sales provided by defendant's expert are sale number 1 ($253,479), number 7 ($394,942), and number 8 ($363,636). After weighing probative value of each of these sales, the court concludes a true value price per acre of $200,000.

Notably, the judge never expressed with any detail why she found the four comparables she identified to be "the most credible."

As already noted, we instructed the Tax Court judge on remand to provide an explanation regarding her valuation "because we [could not] determine how the judge established the ultimate value for Lot 3." HPT TA Prop. I, slip op. at 26. Taking "into account the special expertise of Tax Court judges in matters of

6

taxation," we concluded "that to a point, the judge properly considered the parties' proofs and correctly satisfied her obligation '[o]nce [she found] that the presumption [of defendant's assessment of value] ha[d] been overcome by cogent evidence, [to] . . . independently determine true value.'" Id. at 10, 31 (first, second, and fifth alteration in original) (quoting Brae Assocs. v. Park Ridge Borough, 19 N.J. Tax 306, 312 (App. Div. 2001)). We also found that "the judge made numerous findings that were supported by the record and well within her discretion." Id. at 31.

Nonetheless, we found that the judge failed to explain "how any of the facts . . . led her to the conclusion that the land value of the property was $200,000 per acre." Id. at 32. In addition, we concluded the "judge did not detail how she weighed the evidence or explain the reasoning that led her to fix $200,000 per acre as the value of the land component of the property." Ibid. That omission impeded our ability to review her decision on appeal. Ibid.

Moreover, we warned that "to the extent the judge relied upon defendant's assessor's testimony, or on averaging the comparable sales identified by each expert, that reliance [was] misplaced." Id. at 33-34 (footnote omitted). We instructed that reliance on the assessor's testimony was inappropriate because there was no way to test the accuracy of the "values established by her office [as

7

it was] calculated by an outside service using [an unidentified] formula." Id. at 34. Further, the use of averaging as a substitute for weighing and evaluating evidence, had been rejected because using a "simple mathematical formula" did not satisfy the judge's role as a fact-finder. Id. at 34-35 (quoting Pansini Custom Design Assocs., LLC v. City of Ocean City, 407 N.J. Super. 137, 144 (App. Div. 2009)).

On August 18, 2020, the Tax Court judge considered the parties' arguments. The judge did not consider any additional evidence. However, during the hearing, the judge requested that the parties address her question about "the valuation of vacant land" under the cost approach because her research had not found a "distinction between developed and undeveloped vacant land" that would lead her to reject plaintiff's comparable land sales as argued by defendant. On August 31, 2020, the parties responded to the judge's inquiry by agreeing that property's HBU was its current use as a truck stop/travel center and the HBU of the land as vacant was not an issue in this case.

On October 29, 2020, the Tax Court judge issued her twenty-five-page written decision and entered the four judgments reducing defendant's original tax assessments to the same amounts she had in 2018. In her 2020 decision, she found that "the zoning in place during the tax years at issue does not permit a

A-0972-20

truck stop/travel center, and conclude[d] that the [HBU] of the subject property as vacant is [a] development consistent with a truck stop or travel center but limited as permitted in the [defendant's] B-2 business district."

The judge recognized that despite the experts' "best efforts," the land valuation was "complicated and challenging," which led each expert to "establish other criteria to locate vacant land sales that had similar characteristics to the subject property, and which would require the least amount of adjustments." The judge observed that "[n]either expert claimed that the land component of the subject property could not be reasonably or reliably valued." In addition, she found that "cross-examination [did not] elicit sales more comparable than the ones chosen by the respective experts and their determined criteria." Ultimately, she found and "accept[ed] that although their separate criteria led them to different properties, locations, and ultimately divergent valuations, their efforts to find comparable vacant land sales were thorough and in conformance with real estate appraisal practices."

After reviewing the comparable land sales offered by the parties' experts, the judge accepted and gave weight to two comparable land sales submitted by each party, as compared to the three she accepted in 2018, because they were "the most reasonably reliable comparable sales to determine fair market value."

9

Unlike the Tax Court judge's 2018 decision, the judge dedicated over fifteen pages of her written decision to a detailed analysis of each comparable presented by the two experts and explained why she either accepted or rejected the suggested comparable sales in reaching her ultimate conclusion. And, she explained the reason for any adjustment she made to the values found by the experts.

From plaintiff's expert, she accepted comparables identified as TLS#5 with a 10 percent adjusted value of $45,313 per acre, and TLS#7 with a 10 percent adjusted valued of $54,000 per acre. From defendant's expert, she accepted BLS#1, with a 10 percent adjusted value of $298,211 per acre, and BLS#7, with a 10 percent adjusted value of $394,942 per acre. Further, with regard to the defendant's two adjusted comparable sales values, she recognized that defendant's "expert included a separate lot[, Lot 4.01], which [she] previously determined to have its own individual value, thus slightly inflating [defendant's] two adjusted comparable sales values."

In explaining her evaluation, the judge agreed with defendant's argument that that "three most important factors in valuing land sales are location, location, location." In this regard, she explained that:

> The first location [element] the court focused on was geographic proximity - property in Bloomsbury, near

Bloomsbury, and finally in Hunterdon County. The second location element considered was property at or near an interchange. The third location [element] was property further away geographically (and in these cases the [defendant's] comparable sales are all closer to the large metropolitan areas) that borders or is in near proximity to main travel transportation roadways. These three locational elements were most significant in the court's selection of comparable sales.

After a "thorough review of the evidence, consideration of the closing arguments of counsel, review of the relevant case law including the cases submitted to the court, and reconsideration of all elements of valuation, [the judge] reaffirm[ed her] prior determination of value for all four tax years," and held that the land value of the subject property, for the years at issue is $200,000 per acre. She reasoned that "[o]nce [she] accepted both experts' conclusion that the subject property was unique, logic dictated that the comparable sales were not going to be a 'one size fits all' or 'hand in glove' variety." Thus, "[f]lexibility, not rigidity, was required to determine a fair valuation." Therefore, she affirmed her previous holding of the true market value on the relevant valuation dates after her "conclusions of land value are added to the stipulated depreciated replacement costs," as follows:

| Tax Year | Land | Improvements | Total |
|----------|------|--------------|-------|
| 2014 | $2,404,000 | $2,647,350 | $5,051,350 |
| 2015 | $2,404,000 | $2,638,483 | $5,042,483 |
| 2016 | $2,404,000 | $2,597,386 | $5,001,386 |

11

| Tax Year | Land | Improvements | Total |
|----------|------|--------------|-------|
| 2017 | $2,404,000 | $2,461,079 | $4,865,079 |

This appeal followed.

In our review of the Tax Court judge's determination on remand, we hew to the same limited, deferential standard that we described in our earlier opinion as follows:

> Our review of a Tax Court decision is limited. [Est.] of Taylor v. Dir., Div. of [Tax'n], 422 N.J. Super. 336, 341 (App. Div. 2011). The Tax Court's factual findings "will not be disturbed unless they are plainly arbitrary or there is a lack of substantial evidence to support them." Yilmaz, Inc. v. Dir., Div. of [Tax'n], 390 N.J. Super. 435, 443 (App. Div. 2007) (quoting Alpine Country Club v. Borough of Demarest, 354 N.J. Super. 387, 390 (App. Div. 2002)). In our review, "we take into account the special expertise of Tax Court judges in matters of taxation," Dover-Chester Assocs. v. Randolph [Twp.], 419 N.J. Super. 184, 195 (App. Div. 2011), and a tax judge's "findings will not be disturbed unless they are plainly arbitrary or there is a lack of substantial evidence to support them," Jablin v. Borough of Northvale, 13 N.J. Tax 103, 107 (App. Div. 1991). Thus, we examine "whether the . . . findings of fact are supported by substantial credible evidence allowing due regard to the Tax Court's expertise and its ability to assess credibility." Id. at 108. However, our review of the Tax Court's legal conclusions is de novo. Advance Hous., Inc. v. [Twp.] of Teaneck, 215 N.J. 549, 566 (2013).
>
> [HPT TA Prop. I, slip op. at 10-11.]

In addition, after a remand, we must determine whether the trial court complied with our instructions as written. See Tomaino v. Burman, 364 N.J. Super. 224, 232-33 (App. Div. 2003) (recognizing "it is the peremptory duty of the trial court, on remand, to obey the mandate of the appellate tribunal precisely as it is written" (quoting Jersey City Redevelopment Agency v. The Mack Props. Co. No. 3, 280 N.J. Super. 553, 562 (App. Div. 1995))).

With those guiding principles in mind, we turn to defendant's contentions in this appeal. First, defendant challenges the Tax Court judge's reliance upon any of plaintiff's comparables. However, we considered this very argument in our earlier decision.[1] In fact, defendant concedes in this appeal that we previously rejected its contention that the parties' divergent comparable land sales accepted by the judge "<u>cannot</u> be reconciled" "because they are not

---

[1] As we described in our earlier opinion, "defendant argue[d] that plaintiff's expert's comparable land sales were for properties that were not truck stops/travel centers, were not used for similar purposes, and did not have a similar HBU. Defendant contends that the HBU 'deficiency in [p]laintiff's proofs should have precluded the [judge] from considering any of [p]laintiff's [expert's] . . . comparable sales as evidence of the value of the subject [property].'" HPT TA Prop. I, slip op. at 11. Also, among its earlier arguments, defendant contended, as it does now before us, "that four of [p]laintiff's sales, Numbers 3, 4, 5 and 7, were not verified by the appraiser in accordance N.J.S.A. 2A:83-1 and, therefore, were inadmissible to show land value . . . and that one of the sales, Number 6, was a sale in bankruptcy without any proof that it was a market sale. . . ."

comparable to each other, and [p]laintiff's sales are not comparable to the subject and should have been disregarded." We decline to revisit our earlier determination as our remand was unrelated to the judge's acceptance of both experts' opinions, which we affirmed.

Our review is limited to whether the Tax Court judge erred by concluding that the value of the subject property was $200,000 per acre after she accepted plaintiff's comparable land sales of $49,944 per acre and $59,400 per acre, and defendant's comparable land sales of $328,032 per acre and $434,436 per acre. Defendant asserts that comparing the per acre values in the 2018 decision and the 2020 decision, demonstrates that the judge's "'conclusion' of value was wholly arbitrary" because her adjustments—the positive adjustments of defendant's sales comparable and the deletion plaintiff's comparable number 6— did not "result[] in any change in the [judge's] concluded value" despite the disparity between the appraisals.

Defendant also argues that its assessment must be affirmed because the judge could not determine the property's value. However, it is obvious that the judge determined value and that defendant is unsatisfied with the result. The only issue is whether the judge has now provided an acceptable explanation of her decision. We conclude the judge fulfilled her obligation on remand.

A-0972-20

As already discussed, after finding that plaintiff overcame the presumption of correctness, the judge explained in detail in her 2020 decision why each comparable offered by the parties' experts was either accepted or rejected. By supplying those details and explaining her adjustments to the accepted comparable land values, the judge provided parties and this court with the explanation we deemed necessary in our earlier opinion. Moreover, the decision on remand contained the level of detail that Tax Courts typically provide in cases where there is great disparity in experts' opinions about value.

For example, in Congoleum Corp. v. Hamilton Twp., 7 N.J. Tax 436 (1985), the Tax Court dealt with a similar situation when determining the proper tax assessment for a "massive industrial complex" and where the experts "differed widely as to the true value." Id. at 439, 441. The court accepted a comparable sale that had been selected by both experts, but with widely different valuations after making their adjustments—"a minus 70% for one and a minus 15% for the other, which result[ed] in one expert's valuing the sale at almost three times the opposing expert's value." Id. at 453. In reaching its decision, the court reviewed in detail each of the comparables offered in that case before deciding to accept the comparable sale and making its own determination as to adjustments to ultimately find the subject property's value. Id. at 447-57.

A-0972-20

Here, although the judge never specifically articulated why she selected $200,000 per acre, as compared to a different value, she provided the same type detailed analysis for her acceptance and adjustment of the experts' values. Thereafter, exercising her expertise as a Tax Court judge, she assigned the $200,000 value. Considering the broad range of discretion we afford to Tax Court judges in recognition of their expertise in property value assessments, we have no cause to disturb the result the judge reached in this case in light of her more detailed explanation.

We are not persuaded otherwise by defendant's argument that the judge's error in her conclusion stems from her observation that "[t]he trial focused on the value of the land at its highest and best use as vacant." As the judge clarified at oral argument, her observation stemmed from discussions in the experts' reports as to that value. Despite that observation, it is clear from the judge's opinion that the value she selected for each challenged assessment was based on the property's current use, which everyone agreed was its HBU.

To the extent we have not specifically addressed any of defendant's remaining arguments, we conclude we either need not reach them as a result of our affirmance or that they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-0972-20

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0972-20